## Bermudez Asphalt Paving Company v. George W. Critchfield et al.

1. PUBLIC POLICY—*Contracts—Not Permitted in Contravention of.* —Parties should not be permitted to make contracts which are likely to set private interests in opposition to public interests, or to public welfare. Upon this ground, contracts to pay for procuring, or contingent upon, legislative action, have generally been held void.

2. CONTRACTS—*Corruption of City Officers.*—Contracts calculated to lead to attempts to corrupt the officers of a city government, are void.

Assumpsit, for services, etc. Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1895. Reversed, and judgment in this court. Opinion filed January 22, 1896.

GURLEY & WOOD and WILLIAM J. DONLIN, attorneys for appellant, contended that to hold the agreement invalid as being contrary to public policy, the proof of illegal practices is not necessary. There was, by this agreement, presented the temptation to use improper methods in accomplishing the ends in view in dealing with the members of the city council who were to pass the ordinances contemplated, and the opportunity to use such improper measures.

As said by Justice Grier, in Marshall v. B. & O. R. R. Co., 16 How. 314, "Bribes in the shape of high contingent compensation, must necessarily lead to the use of improper means and the exercise of undue influence. Their neces. sary consequence is the demoralization of the agent who covenants them; he is soon brought to believe that any means which will produce so beneficial a result to himself are 'proper means,' and that a share of these profits may have the same effect of quickening the perceptions and warming the zeal of influential or 'careless' members in favor of his bill. The use of such means and such agents will have the effect to subject state governments to the combined capital of wealthy corporations and produce universal corruption, commencing with the representative and ending with the elector."

It is an undoubted principle of the common law, that it will not lend its aid to enforce a contract to do an act that is illegal; or which is inconsistent with sound morals or public policy; or which tends to corrupt or contaminate, by improper influences, the integrity of our social or political institutions. It is the interest of the State that all places of public trust should be filled by men of capacity and integrity, and that the appointing power, committed to the executive, should be exercised as free from any improper bias or influence as the trial of the convict before the court. Legislators should act from high considerations of public duty. Public policy and sound morality do therefore im-

peratively require that courts should put the stamp of their disapprobation on every act, and pronounce void every contract the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is confided.

Legislators should act with a single eye to the true interest of the whole people, and courts of justice can give no countenance to the use of means which may subject them to be misled by the pertinacious importunity and indirect influences of interested and unscrupulous agents or solicitors. Marshall v. B. & O. R. R. Co., 16 How. 314; Fuller v. Dame, 18 Pick. 472; Hatzfield v. Gulden, 7 Watts 152; Clippinger v. Hepbaugh, 5 Watts & Serg. 315; Wood v. McCan, 6 Dana, 366, and Hunt v. Test, 8 Ala. 719; The Commonwealth v. Callaghan, 2 Virginia Cases, 460.

The sum of these cases is, that all contracts for a contingent compensation for obtaining legislation, or to use personal or any secret or sinister influence on legislatures, is void by the policy of the law. Marshall v. B. & O. R. R. Co., 16 Howard 314; 21 Curtis Dec., Sup. Ct. U. S., 153.

Contracts for the purchase of the influence of private persons upon the action of public officials, either executive or legislative, are against public policy and void. It is sufficient that their tendency is bad. Liness v. Hesing, 44 Ill. 113; Trist v. Child, 21 Wall. 441; 3 A. & Eng. Ency. of Law, 877, 171; Brown v. Brown, 34 Barb. 533. Personal influence to be exercised over a legislative body is not vendible in our system of law and morals. Oscanyan v. Arms Co., 103 U. S. 261; Trist v. Child, 21 Wallace 441. See, also, Debenham v. Ox, 1 Vesey, 276; Addison on Contracts, 91; 1 Story's Eq. 7; Collins v. Blantern, 1 Smith's Leading Cases, 676; Clippinger v. Hepbaugh, 5 Watts & S. 315; Harris v. Roof's Executor, 10 Barb. 489; Rose & Hawley v. Truax, 21 Id. 361; Marshall v. B. & O. R. R. Co., 16 Howard 314.

If any portion of that consideration is illegal, the whole contract is void.

"As a general rule, if any part of an entire consideration

for a promise, or any part of an entire promise, be illegal, whether by statute or at common law, the whole contract is void. If a part of the consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or an illegal purpose, although he may have connected with this act or promise another which is legal." 1 Parsons on Contracts, 380, 456; Henderson v. Palmer, 71 Ill. 579; Webster v. Sturges, 7 Ill. App. 560; Armstrong v. Toler, 11 Wheat. 258; Powers v. Skinner, 34 Vt. 281, 282; Maguire v. Corwine, 101 U. S. 180; Gray v. Hook, 4 N. Y. 419.

PRENTISS, HALL & GREGG, attorneys for appellees, contended that the design to prejudice public interests must clearly appear to warrant a court in denouncing a contract as void. Greenhood on Public Policy, 116.

The power of courts to declare a contract void for being in contravention of sound public policy, is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. Richmond v. Dubuque & S. C. R. R. Co., 26 Ia. 191. A doubtful matter of public policy is not sufficient to invalidate a contract. An agreement is not void on this ground, unless it expressly and unquestionably contravenes public policy, and be manifestly injurious to the interests of the State. Chitty on Contracts, 664; Kellogg v. Larkin, 3 Pinney (Wis.) 123.

MR. PRESIDING JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellees sued the appellant for compensation due them for services under a contract between the parties as follows:

"This agreement, made and entered into on this, the seventeenth (17th) day of April, 1894, by and between the Bermudez Asphalt Paving Company, a corporation organized under the laws of the State of Illinois, with principal office in the city of Chicago, party of the first part, and

George W. Critchfield and W. T. S. Critchfield, of the city of Chicago, county of Cook, State of Illinois, parties of the second part, witnesseth:

That the said party of the first part has this day contracted to employ said parties of the second part as its agents to solicit and promote the asphalt paving business in the city of Chicago, on the following terms and conditions, to-wit:

Section 1. This agreement is to the effect that the said parties of the second part shall be and continue in the employ of said party of the first part as its agents, for the purpose of promoting the asphalt paving business in said city of Chicago, and shall devote their whole time, attention and best energies in and about the business of promoting asphalt paving in said city of Chicago, as the party of the first part may direct. And it is a part of the consideration of this agreement, and the essence of the same, that the said parties of the second part shall continue in the employ of said party of the first part, for and during a period of not less than one year from date hereof.

Sec. 2. Said party of the first part agrees to pay to said parties of the second part the sum of seventeen and one-half ($17\frac{1}{2}$) cents per square yard for all asphalt paving which may be promoted by them, and for which a contract or contracts may be made and entered into in the city of Chicago, and said party of the first part shall further pay to said parties of the second part one-half ($\frac{1}{2}$) of the excess in the prices of curb, or of the combination curb and gutter, which may be secured by said party of the first part, over and above the prices at which said party of the first part sub-let the same to contractors of curb or combination curb and gutter. Provided, however, that any work which may be promoted by the said parties of the second part and for which said party of the first part shall fail to secure the contract, then no payment for said work shall be made by said party of the first part; provided, further, that if said party of the first part shall secure the contracts for work which have not been promoted by them or by their agents, then

and in that event, it shall be their duty and it is hereby agreed that they will pay to the said parties of the second part their full commissions on such an amount of such work as will equal the amount of work which may have been promoted by said parties of the second part and for which contracts were not secured by said party of the first part. It being the true meaning and intention of this agreement, that if said parties of the second part shall promote a given amount of asphalt paving and curb and gutter, then in that event, they shall be paid for such amount of work; provided, that said party of the first part shall secure contracts for said amount of work, or for an equal amount of work.

Sec. 3.    The payment of commissions by said party of the first part to said parties of the second part shall be made upon the basis of the estimated amount of work for each contract, as and at the time the same shall be awarded by the city of Chicago, and when the work is actually done and the amount of work is actually ascertained, a final settlement shall then be made, at which time, if it appears that the contract contained more or less work than that estimated, settlement shall be made accordingly, for the actual amount of the work when finally ascertained, and if payment for a greater amount has been made, the said parties of the second part shall refund the same, and if for a less amount, payment shall be made to them accordingly.

Sec. 4.    It is further understood and agreed that said party of the first part guarantees to the said parties of the second part the following sums of money, to wit:

To the said George W. Critchfield the sum of one hundred and twenty ($120) dollars per month, and to the said W. T. S. Critchfield the sum of eighty ($80) dollars per month; and the said sums of money shall be paid them monthly. The amount herein guaranteed is to be deducted from commissions payable as they accrue, but said guarantee is to be paid at all events as herein stipulated. Nothing shall be paid on account of percentage for work promoted to said parties of the second part till the amount of work promoted, in the manner herein indicated and at the price herein

named, shall exceed the sum total drawn on the guarantees herein specified.    This guarantee shall constitute a lien in equity on any work for which ordinances shall have been passed prior to the 17th day of April, 1895.

Sec. 5.    It is further understood and agreed that all incidental expenses and trouble which said parties of the second part may incur in promoting said work, or in aiding and assisting in the election of officials, or in any other matter pertaining to the promotion of asphalt paving, or of curb and gutter, as herein specified, shall be borne by said parties of the second part.

It is further agreed that the said parties of the second part shall promote all the paving herein provided for in Bermudez asphalt, or for any other material which may be directed by said party of the first part.

In witness whereof, said parties have hereunto set their hands and seals, this, the seventeenth (17th) day of April, 1894; executed in triplicate.

BERMUDEZ ASPHALT PAVING CO.,
By Francis Agnew, President.
GEORGE W. CRITCHFIELD.
W. T. S. CRITCHFIELD.

BERMUDEZ ASPHALT
PAVING CO.    SEAL.

Attest:    JOHN P. AGNEW, Secretary.

Witness to all signatures:    JAS. R. VAN CLEAVE."

It admits of no doubt that " paving " meant paving streets of Chicago, and we must take notice that the first step known to the law toward paving a street, is an ordinance by the city council under Article IX, in execution of the power conferred in clause seventh, Section 1, Article V, of Chapter 24, R. S., Cities, Villages and Towns.

Then, to solicit and promote paving, the natural and probable first step is to procure the passage of such ordinance, and under the large discretion conferred upon two-thirds of the council, under Section 164, Chapter 24, Section 50, of Article IX, the opportunities for presenting inducements for the passage of such ordinances, other than

the benefits to accrue to the owners of property along the streets, or the public, who use them, are not very limited.

"A wholesome rule of law is, that parties should not be permitted to make contracts which are likely to set private interests in opposition to public duty, or to the public welfare." Elkhart County Lodge v. Crary, 98 Ind. 238.

Upon this ground, contracts to pay for procuring, or contingent upon, legislative action, have been generally held void. Goodrich v. Tenny, 144 Ill. 422.

Where the danger from temptation is imminent, and the security against discovery great, the wise policy of the law puts the sting of disability into the temptation, as a defensive weapon. Paraphrased from 1 L. E. Eq. 240.

The contract sued upon we regard as calculated, in its execution, to lead to attempts to corrupt the officers of the city government, and it is therefore void.

The judgment which the appellees recovered is therefore reversed, and final judgment will be here entered for the appellants.

Reversed, and judgment.