THE BARBER ASPHALT PAVING COMPANY *et al.* v. CHARLES L. BOTSFORD *et al.*

No. 8185.

1. STREET IMPROVEMENTS—*Paving Company—Employment of Attorneys.* Under chapter 99 of the Laws of 1887, the action to be taken by the mayor and council of a city of the first class with respect to grading and paving depended to a great extent upon the consent of the owners of property fronting upon the street to be improved; and it was competent for a paving company to employ attorneys and agents to give legal advice, and to collect and present the facts as to the character and superior quality of the paving material which the company proposed to put in, to make arguments, and openly and honestly endeavor to convince the reason and judgment of the property owners and the members of the city council that the interests of the owners and the public would be best subserved by the use of such paving material.

2. COMPENSATION, *When not Defeated.* Where the capacity in which the attorneys and agents are acting is stated and well known, their representations and arguments openly and candidly made, and no secret or sinister influences exerted, nor any improper means employed to obtain contracts for paving under their employment with the company, they are entitled, upon full performance of their part of the work, to the contingent compensation agreed upon, and a recovery will not be defeated by the failure of the company to enter into and perform paving contracts as it had agreed to do.

3. DEFENSE—*Fraud and Illegality to be Pleaded.* In an action to recover for the services rendered by them, under a contract valid upon its face, a defense of the illegality of the contract, or of improper or immoral practices by the plaintiffs which would render it void, and which are not shown by their own pleadings

or evidence, is not available under a general denial. Where illegality and fraud are relied on as a defense, the specific facts constituting the fraud and illegality must be distinctly pleaded.

## Error from Shawnee District Court.

ACTION brought by Charles L. Botsford and Samuel D. D. Smith against The Barber Asphalt Paving Company and Charles E. Squires, its general managing agent, to recover the sum of $4,574.72, as compensation for services alleged to have been rendered by them as attorneys and agents of the company. It is alleged that the company is engaged in the business of paving public streets with asphalt, and that in the conduct of its business it is necessary for it to employ attorneys and agents to make proper representation of the advantages of asphalt, and to do the preliminary work necessary to the obtaining of contracts. It is alleged that about January, 1887, the company employed Botsford and Smith as its agents for the city of Atchison to represent the interests of the company in the endeavor to obtain contracts for paving the streets of Atchison, the rate or amount of compensation to be paid for their services not then being agreed upon, but it was the agreement that the paving should be done by the company at a price not to exceed $2.80 per square yard. Afterward, and about April 14, 1887, an agreement was reached that the compensation for their services should be 12½ cents per square yard for paving all the streets of Atchison, with the exception of one, on which the compensation was to be 10 cents per square yard. One-half of the compensation was to be payable upon the delivery of contracts, and the other half when the final payment was made for the work by the city. It is alleged that they succeeded in having Kansas avenue in Atchison graded and prepared for asphalt pavement, obtained the con-

sent of property owners for paving with that material, and that the mayor and council had determined to pave the greater part of the avenue with asphalt at the rate of $2.80 per square yard, but that the defendants abandoned their purpose of paving the streets in Atchison, and, desiring to defeat the plaintiffs of any compensation for their services, made a bid, without the knowledge of the plaintiffs, for the doing of the paving at the rate of $3 per square yard, which being in excess of that agreed upon between the company, its agents, and the property owners, as well as the mayor and council, the bid was rejected, and the street was afterward paved with other material; and that the failure to secure the contract for the paving material was due wholly to the fault and wrong of the company.

The contract made in April is based on two letters which are as follows:

"OMAHA, NEB., April 11, 1887.

"*C. L. Botsford and S. D. D. Smith, Atchison, Kan.:*

"GENTLEMEN — On behalf of the Barber Asphalt Company, of Washington, D. C., I have the honor to address you relative to the paving of the streets and avenues of Atchison, Kan., with Trinidad sheet asphaltum pavement. In order to better accomplish this, we will need the co-operation and assistance of influential citizens and property holders of your city. Therefore, and for the full accomplishment of this duty of securing the streets of your city for our material, we constitute and appoint you gentlemen our attorneys for this duty in your city. For the vigorous and zealous performance of this duty, and in our sole interest, we will give you, as compensation for services as attorneys and the securing of the work, which contemplates the delivery to us, without cost other than hereinafter named, of contracts for street work duly signed and in full force, we on our part and in the meantime having complied with all requirements of

the specifications as regards local bondsmen, the sum of 12½ cents per yard for each and every yard of Trinidad sheet asphaltum laid in Atchison, Kan., with the exception of Commercial street in said city, on which we agree to pay to the said attorneys the sum of 10 cents per yard. This compensation will be paid as follows, viz. : One-half, or 6¼ cents and 5 cents per yard, according to location, as per foregoing proffer, upon the delivery of the contract or contracts, and the balance of 6¼ or 5 cents per yard at and upon the city engineer's final estimate and the payment of the same by the city. Should the foregoing meet with your approval, and you accept of the trust, you will please so state over your joint acceptance and signature.

Yours, etc.,          C. E. SQUIRES."

"ATCHISON, KAN., April 14, 1887.

"*C. E. Squires, Esq., Agent Barber Asphalt Paving Company, Omaha, Neb.:* DEAR SIR—We are in receipt of your favor of the 11th inst., in which you state the terms of our appointment as attorneys for the Barber Asphalt Paving Company, at Atchison, Kan., which was made by you some time ago. We accept the terms as stated, except we are not to reimburse you or said company for moneys expended for advertising or otherwise prior to securing work and letting of contract for paving for said company upon any street or streets of Atchison, Kan., out of said compensation of 12½ cents per yard ; or, in other words, 12½ cents per square yard is to be paid us net, without any deduction. · And said compensation of 10 cents per square yard on Commercial street does not apply to pavement put upon said street between east side of Thirteenth and Fifteenth streets.

"Please advise us by letter whether or not this meets your approval.     Yours truly,

CHAS. L. BOTSFORD.<br>S. D. D. SMITH."

The answer of the defendants was a general denial only, and a trial had with a jury resulted in a verdict in favor of the plaintiffs below for $5,426.66. The

defendants bring the case here for review.   The opinion herein was filed March 7, 1896.

*Jasper H. Moss*, for plaintiffs in error ;  *Gleed, Ware & Gleed*, of counsel.

*Albert H. Horton*, for defendants in error ;  *Waggener Horton & Orr*, of counsel.

The opinion of the court was delivered by

JOHNSTON, J. :  The principal contention is that neither the petition nor the testimony offered in behalf of Botsford and Smith justifies a recovery.   In the latter part of December, 1886, C. E. Squires, the authorized agent of the paving company, employed Botsford, an attorney at law, to represent the company at Atchison, and he continued in the service of the company until March, 1887, when Smith joined him in the work.   Soon afterward a definite contract was made between them and the company, as shown by the letters of proposal and acceptance heretofore stated. In pursuance of his employment, Botsford investigated the statutes of the state with reference to grading and paving streets in cities of the first class, as well as the ordinances of the city of Atchison concerning the same subject.   Shortly afterward changes were made in the statute, as well as in the ordinances, and he gave advice to the company in regard to the condition of the law and the steps necessary to be taken in the premises.   The testimony is that, when first employed, Botsford and Smith studied the character of asphaltum, and acquainted themselves with the relative merits of the different kinds of paving proposed to be used in Atchison.   They secured and distributed literature advocating the advantages of asphaltum over other paving materials.   Under the law, the grading and

paving of streets rested largely with the property owners whose property would be assessed to pay for the same.  They explained the merits of the paving to the several owners, and endeavored to secure their consent that asphaltum should be used.  Public meetings of the property owners on several of the streets were held, and an effort was made to convince them that for cleanliness, durability, etc., asphaltum was for the best interests of the property owners and the public. They procured the signing of petitions by property owners, requesting the mayor and council to have the streets graded and paved, and they also presented the advantages of asphaltum to the members of the council.  A number of the councilmen and of citizens were taken by them to Omaha to examine the asphaltum pavement in that city.  At the end of several months, and through their efforts, they procured the consent of substantially all the property owners on Kansas avenue to pave it with asphaltum at the rate of $2.80 per square yard.  They also procured a change of grade upon a portion of that street in order that asphaltum might be used.  A meeting of the mayor and council of the city was held on June 6, which was attended by property owners and others, and when the question was to be finally decided.  C. E. Squires, the managing agent of the company, was present at the meeting, and made a bid for the work.  When it was opened, it was found to be $3 per square yard instead of $2.80, the price as understood by the plaintiffs below, the property owners, and the officers of the city. The bid caused both surprise and indignation among the property owners, and within a few days they resolved to use other material.  It appears that the mayor and council left the choice of the kind of paving largely to the property owners, and were ready to

carry out their wishes, and to contract with the com-
pany for asphalt pavement at the agreed price of $2.80
per yard. It is conceded that the price named was
the usual one, but the company insisted that the extra
charge was made because of extra grading which was
necessary to prepare the street for the pavement, and
that all concerned were aware that an extra charge
would be made if extra grading was to be done. This
was denied, and upon this matter of dispute the opin-
ion of the jury has been taken, and it is against the
company.

It is contended that the agreement alleged and
proven was contrary to public policy, and void. An
examination of the terms of the agreement does not
indicate that any corrupt or improper influences were
to be used, nor that the plaintiffs below agreed or were
expected to use any secret or sinister means to effect
the object of their employment. It is true that the
compensation was a contingent one, but under the rule
which obtains in this state the mere fact that the com-
pensation is contingent will not render the agreement
invalid nor bring the parties within the condemnation
of the law. (*Aultman v. Waddle*, 40 Kan. 195.)

Attention is called to the provision in the letter of
acceptance where the plaintiffs below state that they
are not to reimburse the company "for moneys ex-
pended for advertising *or otherwise* prior to securing
work," etc., and it is contended that the words "or
otherwise" refer to some illegitimate means. We
cannot assume that parties were contemplating cor-
rupt and underhanded practices, nor presume that a
contract is illegal. To accomplish the work in which
they were engaged money could be legally expended
and honest means employed. In *K. P. Rly. Co. v. Mc-
Coy*, 8 Kan. 538, it was held that "money may be

used properly and improperly to influence legislation. It is used properly in paying for the distribution of circulars or pamphlets, or otherwise for the collection or distribution of information openly and publicly among members.'' In *McBratney v. Chandler*, 22 Kan. 692, it was held that a contract with an attorney for services to be rendered before a court, department of the government or a legislative body is valid, and upon the performance of the services a recovery can be had; while on the other hand it is said that the employment of a person as a mere lobbyist, in the sense in which that term is used, is forbidden by public policy, and no recovery can be had for such services. It is stated that

'' There is no presumption that a contract is illegal. He who denies his liability under a contract which he admits having made must make the fact of its illegality apparent. The burden of showing it wrong is upon him who seeks to deny his obligation thereon. The presumption is in favor of innocence, and the taint of wrong is matter of defense.''

According to the testimony of the plaintiffs below, they acted openly and honestly in presenting the merits of the asphaltum pavement, and the advantages that would result from its use. Aside from the legal advice and assistance rendered by them, their work was largely with the property owners, who were to pay the greater part of the expense of the pavement. It does not appear that they were employed by reason of any personal or political influence which they could exert, and that they acted for the paving company was well understood by all. The action to be taken by the mayor and council depended to a great extent upon the consent and action of the owners of

the property fronting on the street to be improved.
(Laws 1887, ch. 99, §§ 4, 5.)　It was competent for
the company to employ attorneys and agents
to collect and present the facts with refer-
ence to asphaltum to the property owners,
make arguments, and to openly and hon-
estly endeavor to convince the reason and judgment
of the property owners and the council that the inter-
ests of the owners and the public would be best sub-
served by the use of asphaltum pavement.　As the
cost of the pavement was to be borne by the property
owners, they had a right to request and insist that
the council should use the pavement of their choice,
and the plaintiffs below, in assisting them to fairly
bring the matter to the attention of the council, can
hardly be held guilty of wrong.　It is shown beyond
doubt that the mayor and city council were entirely
willing to accede to the wishes of the property owners,
and to pave the street with asphaltum in accordance
with their request.　If the plaintiffs below had con-
cealed the capacity in which they were acting, and
had performed purely lobbying services, then it would
be clear, as the numerous authorities cited by plain-
tiffs in error show, that no recovery could be had.　It
was shown, however, that they appeared in their true
character, and their representations and arguments
were openly and candidly made.　It was not shown
that any secret or sinister influences were exerted, nor
that any improper means were employed.　In addition
to the authorities cited, see *Foltz v. Cogswell*, 86 Cal.
542 ; *Chesebrough v. Conover*, 140 N. Y. 382 ; *Powers v.
Skinner*, 34 Vt. 274 ; *Miles v. Thorne*, 38 Cal. 335 ; *Deni-
son v. Crawford Co.*, 48 Iowa, 211.　We think the testi-
mony was sufficient to show that the compensation

1. Paving
company
may employ
attorneys.

specified had been earned by the plain-
**2. Compensa-** tiffs below, and that they cannot be de-
**tion, not**
**defeated.** feated from recovering that compensation
on account of the fault or neglect of the
company to carry out its agreement with the plain-
tiffs below and their promises to the property owners.

Testimony offered for the purpose of showing im-
proper and immoral acts by plaintiffs below in carry-
ing out the agreement with the company was excluded
by the court, as not being within the issues of the case.
The answer of the defendants below was a general de-
nial only. Under the general denial, the plaintiffs be-
low were bound to prove the contract entered into by
the defendants, and that the services were rendered.
The illegality of the contract or of improper and im-
moral practices by the plaintiffs below, which would
render it void, is an affirmative defense, which should
be distinctly pleaded in order to be available. The
general denial puts the plaintiffs upon proof of their
cause of action, but does not allow any new matter
constituting a defense to be proved. (Civil Code, § 94;
*Perkins v. Ermel*, 2 Kan. 325; *Stevens v. Thompson*, 5
id. 305; *Clark v. Spencer*, 14 id. 398; *St. L. Ft. S. &
W. Rld. Co. v. Grove*, 39 id. 731.) It has been held
that, where fraud and illegality are relied
**3. Fraud to be** on as grounds to avoid a contract, the spe-
**pleaded.**
cific facts constituting the fraud and ille-
gality must be set forth. "A mere general averment
of fraud and illegality, without stating the facts on
which the charge is based, presents no issue, and no
proof is admissible thereunder." (*The State, ex rel., v.
Williams*, 39 Kan. 517.) See, also, *K. P. & W. Rld.
Co. v. Quinn*, 45 Kan. 477. If the plaintiffs below, in
making their proof, had developed the illegality of the
contract, as was done in the case of *Sheldon v. Pruess-*

*ncr*, 52 Kan. 579, they would not have been entitled to a recovery ; but the rule of that case cannot apply where it is not alleged in the pleadings nor shown by the evidence of the party seeking to recover. To avail themselves of facts not appearing on the face of the contract to establish that it is unlawful and corrupt, and therefore against public policy, they must be affirmatively pleaded as a defense. (*Milbank v. Jones*, 127 N. Y. 370 ; *Musser v. Adler*, 86 Mo. 445 ; *Mathews v. Leaman*, 24 Ohio St. 615 ; *Sharon v. Sharon*, 68 Cal. 29 ; *Buchtel v. Evans*, 21 Ore. 315 ; Bliss, Code Pl., 3d ed., 352–363.) Although the ruling excluding testimony of this character was made at the opening of the defense, no application was made to amend nor to enlarge the answer. If there was anything improper or corrupt in the matter, the defendants below must necessarily have participated in it ; but a charge so serious as that should have been clearly and distinctly stated and an intelligent issue made thereon. For some reason they were unwilling to set up such a defense in a pleading, or to place such a charge upon the record. If application had been made, undoubtedly an amendment would have been allowed, and such proof as they had would have been received.

In several respects there is a sharp conflict in the testimony, but this has been settled by a verdict of the jury, which the trial court has approved, and the dispute as to the facts is thereby ended.

No error was committed in refusing the instructions requested by the company, nor do we find anything substantial in the objections made to those that were given.

The judgment of the district court will be affirmed.

ALLEN, J., concurring.

MARTIN, C. J., having been of counsel, did not sit in the case.