## GLENN v. SOUTHWESTERN GRAVEL CO.

No. 9302—Opinion Filed Jan. 7, 1919.

(177 Pac. 586.)

**Contracts—Contract of Employment—Public Policy.**

A contract for employment which has for its purpose the securing of signatures of property owners to a petition for street improvements, and to secure the passage of the necessary resolutions and ordinances by the city council authorizing street improvements, and to do general promotion work in the interest of the party seeking to secure a contract from the city council for said contemplated improvements when the compensation to be paid therefor is contingent upon the success of securing said signatures and said resolutions and ordinances from the city council authorizing said improvements and adopting the particular kind of paving that the parties to said contract are interested in, is against public policy and void.

(Syllabus by Davis, C.)

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by Lonnie Glenn against the Southwestern Gravel Company, a corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

Utterback & MacDonald, for plaintiff in error.

Hatchett & Ferguson, for defendant in error.

Opinion by DAVIS, C. This action was begun in the district court of Bryan county, Okla., by the plaintiff in error, hereinafter referred to as plaintiff, against the defendant in error, hereinafter referred to as defendant, to recover the sum of $630 alleged to be due the plaintiff from the defendant. The amount alleged to be due the plaintiff from the defendant was evidenced by a certain written contract entered into between the plaintiff and defendant on or about the 29th day of May, 1916. An answer was filed admitting the execution of the contract and raising various defenses, and, among others, that the contract sued on was void for the reason that it was against public policy. On the issues thus joined the cause was tried, and at the conclusion of the evidence, by the agreement of both parties to the action, the jury was discharged, and the cause was submitted to the court, and judgment rendered in favor of the defendant.

A motion for a new trial was filed and overruled. From the action of the court in overruling the motion for a new trial an appeal is prosecuted to this court by petition in error.

The transactions out of which this action arose are as follows: The Shelby-Downard Asphalt Company was desirous of doing certain paving in the city of Durant, Okla. Mr. Downard, of said company, was the owner of a patent process used in laying paving, and desired to secure the services of the plaintiff in securing a contract to do certain paving in Durant, Okla. There was an agreement between the plaintiff and Mr. Downard to the effect that, if the plaintiff was successful in securing the consent of the citizens of Durant to adopt the patent process belonging to Mr. Downard and secure the necessary steps by the city council, the plaintiff was to receive the sum of 10 cents per square yard for the services rendered by the plaintiff in circulating petitions and looking after the matter in a general way before the council. It appears that the plaintiff did do considerable work in this respect, and that he was finally successful in securing the required number of property owners to sign petition, requesting the mayor and city council to take proper steps to pave the street adjacent to their property. In the due course of time the necessary steps were taken by the city council, and advertisement for bids was made.

It seems from the evidence that there was an arrangement made between Mr. Downard and the defendant by the terms of which the defendant was permitted to use the patent process owned by Mr. Downard. It was a part of this agreement that the defendant was to take care of the plaintiff in the matter, or, in other words, to pay him the sum that Mr. Downard had originally agreed to pay him, to wit, the sum of 10 cents per square yard.

The contract that was entered into between plaintiff and defendant is as follows:

"Agreement.

"This agreement made and entered into by

and between the southwestern Gravel Company, of Ardmore, Okla., as party of the first part, and Lonnie Glenn, of Durant, Okla., as party of the second part, to wit:

"The Southwestern Gravel Company, as party of the first part, agrees to pay Lonnie Glenn, party of the second part, the sum of $630.00, six hundred thirty dollars, as a promotion fee in promoting the paving of West Main street from the east line of Fifth avenue to the west line of the city limits.

"Payment to be made to said L. Glenn as follows: First half ($315.00) out of the first estimate allowed by the city council, and the balance due ($315.00) out of the second estimate allowed by, the city council. [Signed] The Southwestern Gravel Company, by George Cotner, President. Attest: James A. Cotner, Secretary. L. Glenn, Party of the Second Part."

The Supreme Court of Illinois had this question before it for consideration in the case of Critchfield v. Bermudez Asphalt Paving Co., 174 Ill. 465, 51 N. E. 552, 42 L. R. A. 347, and in the course of the opinion it is said:

"There are some salient features of this agreement which stamp it as being against public policy. A special assessment for a public improvement under our statute is a species of taxation, and is authorized only as an exercise of the taxing power. A special assessment should not be levied, except for the purpose of making a needed public improvement. The property owner should not be assessed and his property made to bear the burden of taxation, except to secure the benefits of a needed public improvement. The making of a contract to promote the levying of a public assessment, not for the purpose of securing for the public a needed improvement, but for the purpose of enabling a paving company to get a job, is not only against the public interest, but is abhorrent to all proper ideas of justice and honor. Property owners should not be assessed for the purpose of paying moneys into the pockets of * * * contractors, and any contract by which parties agree to obtain ordinances by solicitation and by the exercise of influence upon public officials, and with a view of obtaining contracts which result in the end from the passage of such ordinances, is against public policy, and will not be enforced by the courts. It makes no difference whether the parties were actually guilty of bribery and corruption under the contract or not. If the performance of the obligations imposed by the contract has an evil tendency or furnishes a temptation to use improper means, the contract is illegal and contra bonos mores. One of the striking features of this contract is that, with the exception of the monthly allowance to be paid to the appellants, the compensation to be received by them is contingent upon their success in obtaining the necessary legislation for the levying of special assessments, and securing the paving contracts consequent thereupon."

In the case of Sussman v. Porter (C. C.) 137 Fed. 161, the following rule is announced:

"Cases to the above effect might be cited indefinitely, and very many are cited in the cases referred to. It is clearly deducible from them that a contract to procure or influence legislation is bad, whatever the intention of the parties may have been, and whether the influences actually exerted thereunder were * * * corrupt. It is the temptation to corruption and dishonesty which the courts will not tolerate. It will be noticed, too, that some of the cases cited lay great stress upon the fact that a contingent fee is dependent upon the success of the service. The rule of law in all these * * * cases is that the court will not aid either party to the contract, but each will be left in the position in which he has placed himself. Judicial aid will not be given to either party to a corrupt agreement. This is not because the court desires to favor either party, but because the agreement is corrupt and tainted. In the case at bar an all-important part of the agreement was the procurement of municipal legislation. This was the service stipulated for, and this was the service agreed to be rendered by the plaintiff's assignor. What he has to do in the furtherance of the agreement, or how it was to be done, is not stated in terms, but under the cases that is a matter of indifference: we are not compelled between the lines of the contract to spell out its methods, or ascertain how it was to be carried out, although it may be well that an itemized account of how the moneys were expended that were advanced for 'expenses' could tell the story in no uncertain terms."

The court speaking further in this opinion, said:

"In Critchfield v. Bermudez Asphalt Paving Co., 174 Ill. 466, 51 N. E. 552, 42 L. R. A. 347, and Bermudez Asphalt Pav. Co. v. Critchfield, 62 Ill. App. 221, it is held that employment to procure the passage of ordinances for paving streets at a compensation, which, except for a monthly allowance, is contingent upon success in obtaining the necessary ordinances and in securing the paving contracts consequent thereon, is void on grounds of public policy; and in the course of the opinion it is said an ordinance passed by a common council, providing for the paving of a public street, is a species of legislation as much as an act passed by the Legislature, though the body passing it is subordinate in its character, and is created by the Legislature itself. The rule, therefore, which makes void a contract for a contingent compensation for obtaining legislation applies as well to the common council of a city as to the Legislature of a state. The doctrine laid down in Tool Co. v. Norris, ubi

supra, is adopted in the opinion and a large number of additional cases cited."

We have cited at some length the holding of the Supreme Court of Illinois and the federal court on this question for the reason that each of said cases is directly in point on the question here involved. The case of Critchfield v. Bermudez, supra, was a suit on a contract identical in all respects to the one herein sued upon, and a recovery was denied on the ground that such contracts were against public policy in that they had for their primary purpose the securing of legislation from a city council, and to recognize the validity of this class of contracts would open a wide field for graft and speculation. The case of Sussman v. Porter, supra, was a suit on a contract that had for its purpose the securing of the consent of property owners for the construction and maintenance of a trolley line in front of the properties of the signers, and also to obtain a municipal franchise to operate such trolley line for a fee contingent upon success. The objectionable feature of this species of contract is that the compensation to be derived therefrom, as a sole consideration therefore, is made contingent upon the success of procuring ordinances from a municipal council, which is a species of legislation that requires all the safeguards that the law can afford.

The sole consideration for the contract herein sued upon is the securing of legislation from the city council of Durant, Okla., authorizing the paving and adopting the particular paving handled by the Shelby-Downard Asphalt Company. A failure to secure this desired legislation would result in the plaintiff receiving no compensation whatever for his work and labor. It at once becomes apparent that the clear tendency of a contract of this nature is to use whatever means may be necessary to procure the desired action of the city council. When this tendency becomes apparent, the courts do not stop and inquire whether or not improper means were in fact used. It closes the door and refuses recognition to any contract which opens a field for the use of such means.

In the case of McGuffin v. Coyle & Guss, 16 Okla. 648, 85 Pac. 954, 86 Pac. 962, 6 L. R. A. (N. S.) 524, the doctrine was announced that no contract or agreement which had for its purpose the controlling or influencing of the government, the administration of justice, the appointment of public officers, or the ordinary course of legislation would be enforced by the courts of this state. The rule announced in the case of Tool Co. v. Norris, 2 Wall. 48, 17 L. Ed. 868, was

approved, and this rule has been consistently adhered to by all the decisions since that time.

In the case of Hare v. Phaup, 23 Okla. 575, 101 Pac. 1050, 138 Am. St. Rep. 852, this court had before it for consideration the validity of a contract providing for the payment for services and expenses incurred in procuring the establishment of a post office on a certain block in the city of Tecumseh, Okla. T. Judge Dunn, speaking for the court, said:

"Cases almost without number could be cited and quoted from which hold that contracts of this character are not void because of the conclusion that corruption and wrong doing and undue influence would be the certain result thereof, but on account of the recognition by them of corrupting tendencies of such contract." Davis v. Janeway, 55 Okla. 725, 155 Pac. 241, L. R. A. 1916D, 722.

We are not unmindful that a different conclusion has been reached by the Supreme Court of Kansas in the case of Barber Asphalt Paving Co. et al. v. Botsford, 56 Kan. 532, 44 Pac. 3, but we believe that the rule announced by the Kansas court is against the weight of authority and reason; that it is not in harmony with the rule adhered to by the Supreme Court of this state. It further appears that the conclusion reached by the Supreme Court of Kansas was based more on the state of the pleadings than on the merits involved in the action. For this reason alone it cannot be held to be authority, for the Supreme Court of this state has expressly held in the case of McGuffin v. Coyle & Guss, supra, that in order to reach the question of the validity of a contract that offends against public policy, it is not necessary that such defense be pleaded, but that, when it appears from the evidence adduced by either party that the cause will be dismissed by the court, even though there is no motion made by either of the litigants requesting such action. Parties are not permitted in this state to waive the question of the validity of a contract that is void because against public policy and invoke the jurisdiction of the court to adjudicate their respective rights thereunder.

It appearing from the evidence adduced in the trial of this cause that the primary purpose of the contract sought to be enforced in this action was to secure legislation to be enacted by the city council of Durant, Okla., and that the compensation to be paid plaintiff for the services rendered in this respect was contingent upon his success in procuring this legislation, we are constrained to hold that the contract offends against public

policy, and should receive no recognition in the courts of this, state.

We therefore recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.