## CHAMBERS v. COATES et al.

No. 25776.     Feb. 11, 1936.

Rehearing Denied March 24, 1936.

O. A. Cargill, for plaintiff in error.

Rainey, Flynn, Green & Anderson, Hayes, Richardson, Shartel, Gilliland & Jordan, McLaury & Hopps, and J. W. Field, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Oklahoma county by T. G. Chambers, Jr., hereinafter referred to as plaintiff, against J. S. Coates, Alf McCloskey, Natural Gas Development Corporation, an Oklahoma corporation, and Natural Gas Development Corporation, a Delaware corporation, hereinafter referred to as defendants, as an action to recover attorney's fees for services performed under a written contract. Answers were filed and the cause set for trial. A jury was empaneled and an opening statement was made for plaintiff. Defendants moved for a directed verdict, which motion was sustained and judgment was rendered for defendants. From said judgment plaintiff has appealed.

Plaintiff alleges that defendants were the owners of oil and gas mining leases covering certain property in the Phillips & Meades East Side addition to Oklahoma City; that on November 25, 1930, they employed plaintiff as attorney and counselor at law to represent them in procuring the admission of said addition into the U-7 drilling zone in Oklahoma City; that they entered into a written contract of employment which provided for the payment of an attorney's fee of $30,000 to become due and payable upon the admission of said addition to the U-7 drilling zone in Oklahoma City; that the contract further provided that the plaintiff should not be called upon to exercise any personal influence or the influence of any of his friends or acquaintances in the procurement of favorable action by the board of adjustment or the council of the city of Oklahoma City.

Plaintiff further alleged that he had performed the covenants and agreements of the contract of employment and had procured the admission of the property to the U-7 drilling zone in Oklahoma City by city ordinance No. 4131, and thereupon the sum of $30,000 became due and payable to him; that he had made demand upon defendants and that they had refused to pay said sum or any part thereof.

It is not necessary to set out the allegations contained in the respective answers of defendants, since we are concerned only with a determination of the validity of the contract of employment. The trial court held that said contract was contrary to public policy and therefore void.

It appears that passage of a city ordinance was required in order to secure the admission of the property involved into the U-7 drilling zone of the city of Oklahoma City. Under the terms of the contract the employment of plaintiff contemplated the procurement of favorable legislative action.

We do not find a case reported in this jurisdiction which deals with facts identical

to the facts presented here, but the court has, in several cases, dealt with the principles involved herein. The case of Hare v. Phaup, 23 Okla. 575, 101 P. 1050, involved a contract providing for payment for services and expenses incurred in procuring the establishment of a post office in a city and upon a certain block therein. It was held that the contract was contrary to public policy and void. We quote from the body of the opinion:

' * * * Parties should not be permitted to make contracts which induce personal or private interest to overbear public duty or public welfare. Elkhart County Lodge v. Crary, 98 Ind. 238, 49 Am. Rep. 746. Counsel for plaintiffs say that the written contract of the parties is enforceable, because it is not shown that it is unfair, or that any undue influence was to be used to retain the post office on Main street. Such contracts lead to secret, improper, and corrupt influences, to the injury of the public. In this view we cannot think it good policy for the courts to enforce such contracts. 'All agreements for pecuniary considerations to control the business operations of the government, or the regular administration of justice, or the appointments to public offices, or the ordinary course of legislation, are void as against public policy, without reference to the question whether improper means are contemplated or used in their execution. The law looks to the general tendency of such agreements, and it closes the door to temptation by refusing them recognition in any of the courts of the country.' Providence Tool Co. v. Norris, 2 Wall. 45, 17 L. Ed. 868."

See, also, Whitaker v. First National Bank of Sapulpa, 56 Okla. 270, 155 P. 1175; Davis v. Janeway, 55 Okla. 725, 155 P. 241.

In the case of Glenn v. Southwestern Gravel Co., 74 Okla. 131, 177 P. 586, it is said:

"A contract for employment which has for its purpose the securing of signatures of property owners to a petition for street improvements, and to secure the passage of the necessary resolutions and ordinances by the city council authorizing street improvements, and to do general promotion work in the interest of the party seeking to secure a contract from the city council for said contemplated improvements when the compensation to be paid therefor is contingent upon the success of securing said signatures and said resolutions and ordinances from the city council authorizing said improvements and adopting the particular kind of paving that the parties to said contract are interested in, is against public policy."

We quote further from the body of the opinion:

"The objectionable feature of this species of contract is that the compensation to be derived therefrom, as a sole consideration therefor, is made contingent upon the success of procuring ordinances from a municipal council which is a species of legislation that requires all the safeguards that the law can afford.

"The sole consideration for the contract herein sued upon is the securing of legislation from the city council of Durant, Okla., authorizing the paving and adopting the particular paving handled by the Shelby-Downard Asphalt Company. A failure to secure this desired legislation would result in the plaintiff receiving no compensation whatever for his work and labor. It at once becomes apparent that the clear tendency of a contract of this nature is to use whatever means may be necessary to procure the desired action of the city council. When this tendency becomes apparent, the courts do not stop and inquire whether or not improper means were in fact used. It closes the door and refuses recognition to any contract which opens a field for the use of such means.

"In the case of McGuffin v. Coyle & Guss, 16 Okla. 648, 85 P. 954, 86 P. 962, 6 L. R. A. (N. S.) 524, the doctrine was announced that no contract or agreement which had for its purpose the controlling or influencing of the government, the administration of justice, the appointment of public officers, or the ordinary course of legislation would be enforced by the courts of this state. The rule announced in the case of Providence Tool Co. v. Norris, 2 Wall. 48, 17 L. Ed. 868, was approved, and this rule has been consistently adhered to by all the decisions since that time."

Plaintiff contends that the contract sued upon was not a contract to secure or procure legislative action, but was a contract to perform legal services as an attorney before legislative bodies, quasi judicial legislative committees and boards; that the contract was not unlawful and void as against public policy by reason of the fact that the attorney's fee became due only upon the ultimate action of the public officers. In support of his position plaintiff cites the following authorities: Hazelton v. Scheckells, 202 U. S. 71, 6 Ann. Cas. 217; Steele v. Drummond, 275 U. S. 199, 48 S. Ct. 53; Valdes v. Tulio Larrinaga, 233 U. S. 705, 34 S. Ct. 750, 58 L. Ed. 1163; Nutt v. Knut, 200 U. S. 13, 26 S. Ct. 216, 50 L. Ed. 348; McGowan v. Parrish, 237 U. S. 285, 35 S. Ct. 543, 59 L. Ed. 955; Stanton v. Embrey, 93 U. S. 548, 23 L. Ed. 983. These cases have been examined, and without exception deal with claims of a more or less

private nature pending before Congress, and do not involve legislative action in which the rights of the public are substantially involved. Plaintiff also cites Herrick v. Barzee (Ore.) 190 P. 141; Stroemer v. Van Orsdel, 74 Neb. 132, 103 N. W. 1053, 4 L. R. A. (N. S.) 212, 121 Am. St. Rep. 713; Shouse v. Consolidated Flour Mills Co. (Kan.) 277 P. 54. These cases likewise involve individual claims and do not involve general legislation which tends to affect the public welfare. Several of the above-cited cases were cited with approval by this court in the case of Campbell v. House, 74 Okla. 35, 176 P. 913, which involved a contract with an attorney to appear before the Corporation Commission in a matter which involved the building of a new depot. The court held that the services to be performed by the attorney were before a court or quasi court and that such a contract was not void as against public policy.

A number of the authorities cited by plaintiff were considered by the Court of Appeals of the District of Columbia in the case of Noonan v. Gilbert, 68 Fed. (2d) 775, which was an action to recover attorney's fees for services performed before the Public Utilities Commission and congressional committees in an effort to reduce street railway fares. Under the terms of the contract therein plaintiff was to receive "the sum of $500 in any event, and the sum of $1,000 if said reduction of fares was brought about." In discussing such contract, the court said:

"A contract for services to be rendered by an agent or attorney before a legislative body in securing the passage of a measure is lawful if it does not contemplate the use of improper means. Where the compensation for procuring legislation is contingent, the contract is void as against public policy, regardless of whether corrupt practices are resorted to or contemplated. Marshall v. Baltimore & Ohio Railroad Co., 16 How. 314, 336, 14 L. Ed. 953; Providence Tool Co. v. Norris, 2 Wall. 45. 17 L. Ed. 868; Trist v. Child, 21 Wall. 441, 452, 22 L. Ed. 623; Hazelton v. Scheckells, 202 U. S. 71. 26 S. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217; 6 R. C. L. 735, sec. 140; 13 C. J. 432, sec. 368.

"In the Norris Case the court said: 'Agreements for compensation contingent upon success suggest the use of sinister and corrupt means for the accomplishment of the end desired. The law meets the suggestion of evil, and strikes down the contract from its inception.' 2 Wall. at page 55, 17 L. Ed. 868. The court further observed that 'the decisions have not turned upon the question, whether improper influences were contemplated or used, but upon the corrupting tendency of the agreements.'

"It was held in the Scheckells Case that the contract involved a contingent fee for services which, when rendered, were legitimate. The court said (202 U. S. at page 79, 26 S. Ct. 567, 568, 50 L. Ed. 939, 6 Ann. Cas. 217): 'We assume that they (the services) were legitimate, but the validity of the contract depends on the nature of the original offer, and, whatever their form, the tendency of such offers is the same. The objection to them rests in their tendency, not in what was done in the particular case."

In those cases where the validity of the contract was determined solely upon the fact that the fee was contingent upon success in accomplishing the end sought, there is a sharp conflict in the authorities, but the great weight of authority is to the effect that such a contingent fee arrangement renders the contract void. See annotation and authorities, 29 A. L. R. 166. Such is the viewpoint adopted by this court. Glenn v. Southwestern Gravel Co, supra.

The admission of the property involved herein to the U-7 drilling zone contemplated legislative action which would vitally affect the public welfare. By the acceptance of the terms of employment plaintiff acquired a private and pecuniary interest which may or may not have been antagonistic to the best interests of the public. We are not called upon to determine the motive of any of the parties to this proceeding.

"Contracts of this character are not void because of the conclusion that corruption and wrongdoing and undue influence would be the certain result thereof, but on account of the recognition by them of corrupting tendencies of such contracts. 'Lead us not into temptation' is the divine injunction obligatory upon all, and the declaration of the courts of this country when contracts of this character are presented to them, holding them void because of this tendency, is but a recognition of the doctrine contained in this scriptural precept and its salutary application to contracts which might unduly tempt, or incline men to improperly influence their fellowmen, holding positions of confidence and trust." Hare v. Phaup, supra.

We approve the finding of the trial court to the effect that the contract is void.

The judgment of the trial court is affirmed.

RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BUSBY and PHELPS, JJ., absent.