## HUGHES v. WOODARD et al.

No. 27683. Nov. 16, 1937.

Rehearing Denied Dec. 21, 1937.

Application for Leave to File Second Petition for Rehearing Denied April 5, 1938.

Kleinschmidt & Johnson, for plaintiff in error.

John R. Woodard and F. V. Westhafer, for defendants in error.

CORN, J. This is an appeal from a judgment rendered in the district court of Tulsa county, in an action brought by the defendants in error to recover $514, allegedly due them as attorneys' fees.

The question arose under the following

circumstances. In 1930, the people of Tulsa voted bonds for public improvements, including street widening projects, affecting private property, including that belonging to the plaintiff in error. By 1932, some $400,000 was left; the improvements were not completed and the city commission determined to abandon further improvements and use this money to pay old warrants not connected with the bond issues.

This action aroused certain citizens interested in seeing these improvements made, and they employed the defendants in error to prevent such action and force the city to proceed with the improvement program. An injunction suit and two mandamus actions were filed. The city was enjoined from misuse of the funds, but before the mandamus suits were tried the city agreed to proceed with the improvements.

Not having been paid for their services, the defendants in error proposed a plan whereby the property owners would pay them a percentage of the sale price of the property acquired by the city, 'as attorneys' fees for services rendered in compelling the city to proceed. Some 20 property owners signed the agreement, including the plaintiff in error, who set the sale price of his property at $7,800. The defendants in error continued their efforts in behalf of the owners, and several deals with the city were closed.

During their efforts the defendants in error served the city with a list of property owners who had signed the agreement and claimed a lien upon this property to secure their fees. By 1934, no agreement had been reached regarding the property belonging to the plaintiff in error and the city brought a condemnation suit, making the defendants in error parties defendant because of their lien claim. Appraisers set the value of the plaintiff in error's property at $10,780, and both the defendants in error and the city joined in an application to have 5 per cent. of this amount impounded with the city clerk until the rights of the parties could be determined. The defendants in error answered the petition of the city and cross-petitioned, asking for payment.

The plaintiff in error then moved for judgment against the city on the appraiser's award 'and the city moved to dismiss its suit, but neither motion was ever heard, and a compromise was later effected whereby the plaintiff in error received $10,280, less the 5 per cent which was impounded under the court's order.

Issues were joined and the matter was tried to the court as to the right of the defendants in error to the $514. The trial court rendered judgment for this amount, and from this judgment the plaintiff in error has appealed, setting up nine assignments of error, grouped under three propositions, as grounds for reversal.

The first proposition urged as ground for reversal is that the contract sued upon is void as being against public policy. In this connection the plaintiff in error argues that the contract made no mention of any litigation, and that the meaning and purpose of the contract was solely to influence the city of Tulsa in adopting a favorable course of action. We can find no merit in this argument.

In the first place, the services for which the attorneys' fees were asked had already been rendered for the most part. The city had attempted, or was contemplating, an illegal and unauthorized use of certain bond money in which this particular class of taxpayers had 'a very evident interest. The services were for forcing performance and compliance with previous legislation, and to preserve this money for the benefit of this class of taxpayers, of which the plaintiff in error was one, from illegal dissipation. There can be no grounds for arguing that the services were for the purpose of controlling or influencing the city government in the course of legislation. The end to which the efforts of the defendants in error were directed was to restrain the commission of an illegal act and to force compliance with a legal duty owed this group of taxpayers.

Supporting his contention the plaintiff in error cites numerous authorities holding that a contract whereby a lawyer is to receive a contingent fee, based upon doing some act in regard to controlling the course of government, is void and against public policy. We find no grounds for disagreement with the authorities offered, for such is undoubtedly the law in all jurisdictions. One of the principal authorities cited by the plaintiff in error is the case of Glenn v. Southwestern Gravel Co., 74 Okla. 131, 177 P. 586, which quotes with approval from an Illinois case deciding much the same question, and holding that the rule which makes void a contract for contingent compensation for obtaining legislation applies to a city council as well as to a state Legislature. Also cited are Chambers v. Coates, 176 Okla. 416, 55 P. (2d) 986, and McGuffin

v. Coyle and Guss, 16 Okla. 648, 85 P. 954, 86 P. 962, 6 L. R. A. (N. S.) 524.

There is one salient, distinguishing feature to be noted in these and the other authorities cited by the plaintiff in error which makes them easily distinguishable from the case at bar. This is, that all the cases offered by the plaintiff in error turned on the point of a contingent fee, contingent upon the success of procuring a species of legislation, this being the sole consideration.

The very facts of the case at bar preclude the cited authorities from being applicable. The action or services here were not to control the course of government, they were directed toward forcing the city to discharge a legal duty. There was nothing in the agreement tending to inject the element of personal influence and solicitation in procuring any action by the city.

The validity of a contract is not to be destroyed merely because the compensation for the services rendered is contingent, when the purposes for which a person is employed are to render legitimate professional services. It is a question for the trial court to determine, as a matter of law, whether a contract is void, as against public policy, and the power to declare a contract to be in contravention of public policy is a delicate and undefined power, to be exercised only in cases free from doubt. See Huber v. Culp, 46 Okla. 570, 149 P. 216.

It has been said that it is elemental in the law of contracts that the courts will not declare contracts void on the grounds of public policy except in cases that are free from doubt; and that prejudice to the public interest must be clearly apparent before a trial court is justified in pronouncing a contract void on that account. Stansell v. Roach, 147 Tenn. 183, 246 S. W. 520, 29 A. L. R. 143. See, also, the annotations therein. Certainly, under the rule above stated, there can be no grounds in the case at bar for declaring it void as against public policy.

The second contention urged by the plaintiff in error raises the question whether the petition of the defendants in error stated a cause of action, and whether the evidence proves a right to recover. The plaintiff in error contends that there was no evidence that he employed the defendants in error personally, and that he had no greater interest as a member of an interested class than any other taxpayer in the city of Tulsa.

The existence of the contract was a question to be determined by the trial court, and after hearing all the testimony, the trial judge decided that a contract did exist and that it had not been terminated by the plaintiff in error and that he was bound by the terms of his agreement. Consideration of the record establishes that such matters were sufficiently supported by the evidence, and under the rule of this court, supported by a multitude of decisions, the trial court's judgment will not be disturbed if it is supported by competent evidence.

For the third ground upon which the plaintiff in error asks reversal, it is urged that the defendants in error were so guilty of fraud as to preclude recovery on this contract. This contention is evidently made because it appeared at the trial that the defendants in error made an agreement with two of the interested property owners that the fee collected from them for such services should be less than the amount charged the plaintiff in error.

It is firmly established that the one alleging fraud assumes the burden of proving it by clear and positive evidence. See Hembree v. Douglas, 169 Okla. 403, 37 P. (2d) 314, one of the most recent announcements of this rule from this court. The testimony of the plaintiff in error was that the party who called upon him, urging him to sign the agreement with the defendants in error, told him that "everybody" was signing such an agreement. The plaintiff in error, a property owner, certainly of previous experience in business matters and dependent solely upon his own judgment, can scarcely be heard to complain that he was fraudulently led into signing a contractual obligation merely because he was told that "everybody" was signing such a contract.

Neither is the fact that a different arrangement was made with the other property owners than the one had with the plaintiff in error sufficient to show fraud on the part of the defendants in error. In this connection it is to be noted that the plaintiff in error signed this agreement prior to the time the one allowing the so-called "rebate" was made with the other parties. He does not attempt to show that he would not have entered into such an agreement had he known or suspected that everyone signing would not pay the 5 per cent. he agreed to pay. The testimony showed that he took some time to study the proposition over before he did sign, giving added weight to the idea that he knew exactly what he was doing.

As has been said by this court, "fraud" embraces all the multifarious means which one party resorts to in an attempt to gain an advantage over another, by false suggestions or suppression of truth. Hawkins v. Bryan, 128 Okla. 27, 261 P. 167. Actionable fraud is predicated upon a showing that false, material representations were knowingly or recklessly made, intended to be acted upon, and which were relied upon and resulted in injury, and that the party relying thereon would not have executed the contract but for such representations being made. See Melton v. Whitney, 164 Okla. 220, 23 P. (2d) 660.

We deem it unnecessary to discuss at length the fourth proposition of the plaintiff in error, which urges that the trial court erred in the amount of recovery. It is argued that, since he listed his offer at $7,800, any recovery to which the defendants in error are entitled must be based upon this amount. However, at the trial and in open court, counsel for the plaintiff in error stated that there was no argument as to the amount, that the defendants in error were entitled to the amount impounded or nothing at all. The trial court having determined that he was liable for the amount of $514, we fail to see upon what grounds he can now ask this court to hold the trial court in error, when the agreement to pay 5, per cent. of the amount as attorneys' fees was not based upon any particular amount to be recovered, but upon what was actually paid in the final settlement.

Judgment of the trial court affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and GIBSON, JJ., concur.