JOHNSTON et al. v. J. R. WATKINS CO.

No. 31638. April 10, 1945.

157 P. 2d 755.

Creekmore Wallace, Arnold Fleig, and W. A. Carlisle, all of Oklahoma City, for plaintiffs in error.

Pierce, McClelland, Kneeland & Bailey, of Oklahoma City, for defendant in error.

PER CURIAM. On the 23rd day of April, 1941, J. R. Watkins Company, a corporation, hereinafter referred to as plaintiff, filed its action against Llewellyn Johnston et al. to recover upon a contract representing the transactions between the parties relating to the sale of products of said company in a restricted area referred to in the contract as the seller's district. Llewellyn Johnston was, at all times referred to in this opinion, the authorized agent of plaintiff.

After the filing of the petition the defendant Johnston filed a counterclaim consisting of two propositions. In the first proposition it is alleged that Johnston entered into a contract with the plaintiff to aid and assist and counsel plaintiff in resisting certain attempts by legislation to regulate under license the sale of plaintiff's products. The second proposition grows out of an alleged counterclaim based upon an agreement with a district agent of plaintiff for commissions for goods, wares, and merchandise sold and delivered by the plaintiff to institutions and customers outside of the defendant's district.

Paragraph 4 of defendant's third amended answer is as follows:

"The defendant states that on or about the first day of February, 1939, at the Wells Roberts Hotel, in the City of Oklahoma City, Oklahoma, one J. M. Gowdy, who was an agent and employee of plaintiff and who was acting for plaintiff, and who was at that time sales manager of a certain district of the United States for plaintiff, the boundaries of which district are known to plaintiff and not to defendant, except that Oklahoma is located in said district, the headquarters of said district being at Memphis, Tenn., and the said J. M. Gowdy who was in charge of said headquarters employed defendant to act in an advisory capacity to assist the agents and employees of the plaintiff company and other companies engaged in an organized fight against the enactment of House Bill No. 206, then pending in the 17th Session of the Legislature of the State of Oklahoma, having for its purpose the licensing and regulation of itinerant merchants, etc. That the said J. M. Gowdy acting for the plaintiff employed defendant by verbal contract to stay at the State Capitol during the pendency of said proposed legislation and to advise those who were appearing before legislative committees and doing such things authorized by law in opposition to said bill. In said contract of employment it was agreed that defendant was not to lobby nor appear before committees because he did not have a permit, but as already stated his duties were to advise and assist those who led the fight against said bill by plaintiff and other companies similarly situated and who had a right to

appear before committees and to distribute such circulars and letters in opposition thereto that were authorized by law, and those leading the fight against said legislation are better known to plaintiff than they are to defendant. That in said contract of employment no set price was fixed as compensation for the services of defendant, but it was agreed that he would be paid reasonable wages for his services and also his expenses. That he did not work on a contingent basis and his pay was not dependent on the outcome of said legislation. That in pursuance of said employment defendant worked at the State Capitol thirty-nine days by advising and assisting those leading the opposition to said proposed legislation, which was defeated. That he paid his living expenses during this time, including expenses going to and from the Capitol and at the Capitol, which were at least $4.00 per day, and that his services were well worth $6.00 per day, making the total sum of $10.00 per day for thirty-nine days amounting to $390.00 due this defendant, for which demand was made upon plaintiff and payment refused. That said sum of $390.00 is a just and legal set-off against said indebtedness for said merchandise described in the itemized statement of plaintiff, marked exhibit B, and the defendant is entitled to have credited upon said account the said sum of $390.00."

Upon motion the trial court struck both counterclaims, and after a trial upon the merits, which are not seriously contested and which are not involved in this proceeding, entered judgment for the plaintiff against the defendant.

The defendant has appealed and in six allegations of error presents two propositions: (1) The court erred in striking paragraph 4, which is the paragraph above set out relating to his alleged services; (2) the court erred in striking his counterclaim based upon his commissions as above stated.

The plaintiff, without having pleaded to the answer and counterclaim represented in paragraph 4, filed its motion to strike said cause of action for the reason that it was void on the ground of

public policy as being in conflict with 21 O.S. 1941 § 314, and following. The defendant stood upon the validity of his contract, relying upon the facts alleged and stating that it is not contrary to the terms and provisions of the enactments above referred to.

The validity of contracts made in consideration of oppearances before legislative bodies is fully discussed in Stansell v. Roach, 147 Tenn. 183, 246 S.W. 520, 29 A.L.R. 143, and annotations following the A.L.R. citation and the subsequent annotations following State ex rel. Okanogan County, 153 Wash. 399, 280 P. 31, 67 A.L.R. 668.

The court has approved and disapproved contracts where the defense is on the ground that the contracts are void as against public policy; but in no case has this court considered a fact situation involving appearances before the Legislature of the State of Oklahoma. See Glenn v. Southwestern Gravel Co., 74 Okla. 131, 177 P. 586; McGuffin v. Coyle & Guss, 16 Okla. 648, 85 P. 954, 86 P. 962, 6 L.R.A. (N.S.) 524; Chambers v. Coates, 176 Okla. 416, 55 P. 2d 986; and Hughes v. Woodard, 182 Okla. 372, 77 P. 2d 685.

The relevant portion of 21 O.S. 1941 § 314 is as follows:

"It is against public policy, and against the best interest of the people of the State of Oklahoma, for any person employed for a valuable consideration to act as legislative counsel or legislative agent or any other capacity, for any person, firm, corporation, or association, to attempt personally and directly or indirectly to influence any member of the Legislature to vote for or against any measure pending therein, otherwise than by appearing before the regular committee thereof, when in session, after having permission in writing from the presiding officer, subject to the approval of the house before whose committee he desires to appear. . . ."

There is no doubt that the Legislature has the power to restrict the right to appear before it or its committees

and it can regulate so-called lobbying, and it has chosen to do so in the above enactment and subsequent sections of of the law not necessary to refer to herein. Stansell v. Roach, supra.

The terms of the alleged contract set out in paragraph 4 of the answer and counterclaim are not a violation of the above-quoted statute. Nowhere does the defendant allege that he intended to "lobby" within the terms discussed in the above cases. The committee with which he was to advise and counsel was a committee intending to lobby within the general terms of the definition of lobbying, but said committee was authorized to lobby. It is alleged that it had completely complied with the law. It is so agreed by both the plaintiff and the defendant.

The power to declare a contract to be in contravention of public policy is a delicate and undefined power to be exercised only in cases free from doubt Hughes v. Woodard, supra. It has been said that it is elemental in the law of contracts that the courts will not declare contracts void on the ground of public policy except in cases that are free from doubt, and that prejudice to the public interest must be clearly apparent before a trial court is justified in pronouncing a contract void on that account. Stansell v. Roach and Hughes v. Woodard, supra.

A contract for purely professional services, such as drafting a petition for an act, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them to the committee or other proper authority, is clearly valid even though such services are to be performed for a contingent fee. 2 R.C.L. § 122, pp. 1041, 1042, and Hollister v. Ulvi, 199 Minn. 269, 271 N.W. 493. In Hughes v. Woodard, supra, we said:

"The validity of a contract is not to be destroyed merely because the compensation for the services rendered is contingent, when the purposes for which a person is employed are to render legitimate professional services."

And in Hollister v. Ulvi, supra, it is stated:

"In passing upon the issues presented by the demurrer, we may not act upon mere suspicion, or jump at what may be wholly unwarranted conclusions, that there must be something wrong with the plaintiffs' contract or the rendition of services thereunder. Rather, we should start upon the theory that plaintiffs' petition and the contract they entered into with Ulvi are to be tested by the proof in the usual course of trial upon the merits. Let the facts be shown. Then and then only may appropriate legal remedy be made applicable and determinative."

When the above contract set out in paragraph 4 of the defendant's answer is viewed in the light of the above decisions we are of the opinion, and hold, that there is nothing in the terms thereof which would indicate that there was any violation of 21 O. S. 1941 § 314 involved in his agreement to advise and counsel with the committee duly authorized to appear before the Legislature or its proper committee.

Addressing ourselves to defendant's second proposition, we agree with the trial court that there was a fatal defect in failing to plead either that the district agent of the plaintiff was authorized to change the terms of the written contract, or that if the goods were shipped and the commissions earned the plaintiff ratified and confirmed his right to the commissions. A failure to allege either of these facts was an attempt to vary the terms of a written contract.

For error of the trial court in striking the defense in paragraph 4 of the answer and counterclaim, the cause is reversed and remanded to the trial court, with directions to proceed in accordance with the views herein expressed.

Reversed and remanded, with directions.

GIBSON, C.J., HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.