### MELTON v. WHITNEY et al.

No. 21578.    Opinion Filed July 5, 1933.

D. D. Brunson, E. W. Kemp. Opal M. Ahrens, and J. B. Campbell, for plaintiff in error.

H. H. Edwards, W. C. Wood, and W. L. Chapman, for defendants in error.

OSBORN, J. This action was commenced in the district court of Seminole county by Joe Melton against E. W. Whitney and numerous other defendants, to cancel certain conveyances of real estate.

The cause came on for trial, and at the conclusion of the evidence the court rendered judgment in favor of defendants, and plaintiff has appealed. The parties will be referred to as they appeared in the trial court.

The record shows that on March 26, 1919, plaintiff entered into a contract to purchase from one Dr. J. N. Harber certain real estate described as:

"An undivided five-sixths interest in the south half of the northeast quarter and the southeast quarter of the northwest quarter of section 1, township 8 north, range 5 east."

That according to the terms of the contract of purchase the consideration was to be $2,500, and was to be paid as follows: $250 cash, $250 on June 1, 1919, and $500 on the first day of each succeeding June for four years, the deferred payments being evidenced by notes which were delivered to Harber. The contract further provided that when all payments were made a deed was to be executed and delivered to plaintiff, but, in the event plaintiff failed to comply with the terms of the contract, the same became null and void.

Plaintiff was in possession of the lands at that time as a tenant of Harber, and continued in possession, made the cash payment, and in June of 1919 paid $250, and in June, 1920, made the payment of $500, or a total of $1,000. In 1921 plaintiff went to California, leaving his brother as a tenant of the lands in question, returning in October, 1923. In the meantime, when the June, 1921, payment became due, with the consent of plaintiff Harber secured a loan from the Commerce Trust Company of $1,500, for which he executed his note and a mortgage against the property, and also a commission note and a second mortgage in the sum of $450.

The record further shows that when plaintiff returned from California, he stayed only a short time, and attempted to sell an oil and gas lease upon the premises for the purpose of raising funds to take up the outstanding indebtedness, but was unable to sell the oil and gas lease; that plaintiff talked to one A. S. Kouri about the matter, and they had an understanding to the effect that Kouri was to assist in getting the matter straightened up by taking a part of the land to pay existing indebtedness. It is shown that Kouri owned an undivided ten-acre interest in the lands.

After plaintiff returned to California, he received the following letter from defendant, Whitney:

"I am writing you as the attorney for A. S. Kouri, who is trying to handle your land and pay up the balance due thereon to Dr. Harber and the loan company.

"The land is described as S. ½, N. E. ¼ and S. E. N. W. 1-8-5.

"There is a first mortgage of $1,500 to the Commerce Trust Company of Kansas City, Book 118, at page 28, and a second mortgage for $450 to the same people in Book 118, at page 30.

"The amount due on this place to pay everything to Jan. 1, 1924, is as follows:

"6% interest on $1,500 for 1 year $ 90.00
"Commission note due Jan. 1, 1924 150.00

"Total due loan company $240.00

'To Dr. J. N. Harber, interest on three notes each for $500., less credit on one note of $120. (2 years and 9 months at 8%) $263.87

"One commission note paid Jan. 1, 1923 and interest thereon $161.50

"Amount to J. N. Harber incident to closing of $1,500 loan, taxes, etc., about $300.00

"1923 taxes due now 75.29
_____
"Total $1,040.66

"I have an arrangement with Dr. Harber to hold this matter open until I can hear from you and get an answer.

"The situation is this. When you were here Dr. Harber said the amount was about $300 to $400, but you see he had paid the commission note for $150 and the interest on the loan that he had forgotten. It is going to take three times as much money as we thought to save this place, or so Mr. Kouri has asked me to write you fully and outline the situation, and then put the propositions contained in this letter and ask you to let us know by return mail which one you want to do. So please let me know by return mail in the enclosed stamped envelope.

"1st. If you want to get free of the proposition entirely and let them assume all indebtedness they will give you $200 cash and keep the whole matter and assume all.

"2nd. If you want to let them have the oil lease sale and get what they can out of it to help pay this expense to Jan. 1,

1924, Mr. Kouri will deed you an undivided 40-acre interest in the place subject to the mortgage and lease.

"3rd. If you want to retain the oil lease on your part, Mr. Kouri will deed you an undivided 30-acre interest, subject only to the mortgage, of which you would assume your individual part.

"Please let us know at once, and if you want to do so, please telegraph which one you prefer.

"I know that Mr. Kouri has been conscientious and is trying to help you, so you will understand that the above offers are the best that he can do for the amount of money involved.

"Please let me hear from you at once just what you want done and I will proceed. Leases are not worth much in there yet.

"Yours very truly,
"E. W. Whitney."

It is further shown that on January 5, 1924, the plaintiff answered the above letter as follows:

"I have your letter of the 30th and in answer to same will say I would like to have 40 akers of the land Mr. Kouri may get oil lease on it to help pay the expense that is all rite he is a man and I don't believe he will rob a cripple out of all he has so go ahead and deed me 40 of it. I paid harber for a 10 aker shair of that place.

"Yours truly.
"Joe Melton."

The record discloses that on January 12, 1924, defendant wrote plaintiff as follows:

"Mr. Kouri and his associates have just about gotten our Harber deal closed where we get a deed, but we need a statement which Dr. Harber sent you about the costs. We have agreed to settle by that, and so if you will send it to me, I can close this matter and then give you a deed to your 40-acre interest. Please send me this by return mail. I enclose an envelope addressed to myself for that purpose. When you write, tell me about the rent. Did Dr. Harber ever pay you any rent since you left, and if so, tell the amount and date paid. If he paid you none, tell me who was on the place and what arrangements you had with them about paying the rents. We want to protect you and ourselves too, and I need to know all about it. Mr. Kouri is surely doing his best to save you all he can in this matter. You need have no fear about getting what he promises you. I have your letter accepting the 40-acre interest to you, on the arrangement to give us the oil lease to help straighten this up. We accept that proposition and will carry it out.

"Yours very truly,
"E. W. Whitney."

On January 24, 1924, defendant again wrote plaintiff as follows:

"I received your letter dated January 15, 1924, this morning, containing the statement from Dr. Harber. I will take care of it. I needed it to establish some items of expense. As soon as I can get this matter straightened out, I will send a deed for your 40-acre interest in it and that 40-acre interest will be clear of all expense up to this time. The taxes will be paid, including the 1923 taxes, in full, the interest and the 2nd commission note, totalling $240 will be paid so that all that will be against the place will be the first mortgage of $1,500, which will not be due until next December, 1924, and of course the oil lease will be on the place if I can sell it, and I think I can. I am writing this in detail so you will know what you are to get and that it is to be clear.

"Then we will all proceed according to our interests from that time on. If you have no objections, shall I rent the place for 1924 for rent and collect the rents and divide them according to the respective interests? Shall I let your brother, who I understand is now on the place, work it for 1924 on crop rent? Advise, if you have any preference, as I want to know what you want, and then I will go ahead and see that we all get a square deal.

"I believe I can make the rents pay the taxes and interest.

"Yours very truly,
"E. W. Whitney."

On January 29, 1924, plaintiff replied to the above letter stating, in effect, that it would be satisfactory to rent the place to plaintiff's brother.

The testimony of the defendant is that the matter was called to his attention by A. S. Kouri, that together they interested one Oscar Siaid, and the three of them agreed to make some effort to save what they could out of the land and divide whatever profit they were able to make after satisfying the indebtedness.

The defendant testified that he interviewed Dr. Harber about the matter and received a statement of the indebtedness of plaintiff to Dr. Harber and made a tentative agreement whereby Harber was to execute a deed to him which was to be placed in escrow until the transaction could be ratified by plaintiff. Dr. Harber testified that he immediately wrote a letter to plaintiff asking if it was agreeable to execute the warranty deed to defendant or his associates and plaintiff answered that it was satisfactory, but the letter of plaintiff was lost and could not be produced at the trial. The testimony

of Dr. Harber in this connection was not denied. It is shown that the deed was executed to the defendant Whitney and recorded on January 15, 1924.

On March 28, 1924, defendant sold an oil and gas mining lease on the property for $1,100 and out of the proceeds paid the indebtedness due Dr. Harber and the Commerce Trust Company, and thereafter executed a deed to plaintiff for 40 acres and deeded a one-third interest in the remainder to A. S. Kouri and another one-third interest to Minnie Adwan Siaid, the wife of Oscar Siaid, according to the terms of the agreement between them.

Thereafter plaintiff returned from California and they proceeded to operate the farm, plaintiff and defendant maintaining a joint bank account for this purpose in which the rents were deposited and out of which funds were drawn to make improvements on 'the land. During this time it is not shown that plaintiff expressed any dissatisfaction with the transaction.

In 1928 it appears that oil was discovered on the land involved, and on August 14, 1928, plaintiff signed a division order in which he certified that he was the owner of a 40-acre interest in the land. This action was filed on October 1, 1928.

In the meantime a great many transfers of royalty interests in the land were made in which a number of persons were interested. They were made parties to this action and their interests are shown in the record, each of them having acquired their interests through Whitney, Kouri, or Siaid. It would serve no useful purpose here to enumerate their names and respective interests.

Since this a proceeding in equity, this court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal, unless it is made to appear that such findings and judgment are against the clear weight of the evidence. McKay v. Kelly, 130 Okla. 82, 264 P. 814; Cull v. Cavanaugh, 95 Okla. 157, 218 P. 299; Thomas v. Halsell, 63 Okla. 203, 164 P. 458.

The burden of plaintiff's contention is based upon the doctrine of fiduciary relationship in that A. S. Kouri was his agent and the defendant, Whitney, was his attorney, and that they practiced fraud against him by their failure to inform him of some of the details of the transaction, and that as such agent and attorney they were pro-

hibited from taking the property in their own name without making a full and complete disclosure of all the information they possessed, relative to the property, to plaintiff. In the judgment of the trial court there is a specific finding that the defendant, Whitney, was not plaintiff's attorney and that there was no evidence of fraud. The following testimony of plaintiff appears in the record regarding the conversation had with Kouri:

"Q. He made you a proposition that he would take a part of the land to pay for the debt? A. We talked about that. Q. You had a talk about that? A. Yes, sir. Q. What other conversation did you have with him about it? A. About all I remember. Q. Well, was it agreeable with you to give him a part of the land at the time and he pay the debt? A. Well, I never paid—I never did make any certain contract with him to do this. Q. Well, I asked you if it was agreeable with you—was that agreeable to you—did you feel kindly toward that kind of a proposition? A. Well, I didn't make a lease on it. Q. Q. In other words, if you didn't sell a lease, you would be willing to make some trade with him by which he take part of the land and clear the debt on it? A. Yes, sir. Q. Now, when did you have another conversation with him, Mr. Melton, about your rent? A. That was all that I remember at this time. Q. Was that all the conversation you ever had with Kouri about this land? A. While I was here. Q. While you were here in '23? A. Yes, sir."

In view of plaintiff's own testimony we are unable to ascertain where a relationship of principal and agent arose between plaintiff and Kouri. It is more apparent that Kouri was to be a buyer instead of an agent to sell. It is also clear that plaintiff and the defendant, Whitney, were not even acquainted prior to the correspondence above outlined between them. Whitney was interested in the transaction solely through Kouri, and it will be noted in the above correspondence that he distinctly specified the fact that he was Kouri's attorney. Under this state of facts there is no merit whatever to plaintiff's contention as to the relationship of principal and agent or attorney and client. Consequently, all the authorities cited in plaintiff's brief in this connection are inapplicable.

The plaintiff contends that equity treats things agreed to be done as actually performed so that the effect of the contract of March 26, 1919, between Dr. J. N. Harber and plaintiff, was, in fact, a transfer of the equitable title to said land, since by

the terms of the contract, when the payments were completed, there was nothing to be done except the execution of a warranty deed from Harber to plaintiff, and that when the property was deeded from Harber to defendant, nothing passed except the naked title, the equitable title remaining vested in plaintiff. This position is unsound for the reason that plaintiff, by his voluntary act, directed the execution of the deed to defendant after a complete and thorough understanding between the parties. It is shown that the indebtedness against the property at that time was greater than the amount plaintiff had invested in it; that under the terms of his contract of sale he was in a position to lose all of his interest in the property. To avoid this he voluntarily entered into a contract with defendant whereby he was to save a portion of said property which evidently at that time appeared to be a fair business transaction. bearing in mind that there was no potential oil value attached to the land. Without launching into a discussion as to what the rights of plaintiff were under the contract of sale with Harber, he voluntarily divested himself of such rights by authorizing transfer of the title in the 120 acres from Harber to defendant for the consideration hereinabove mentioned. The contract between plaintiff and defendant was thereby substituted for the original contract between plaintiff and Harber, so that plaintiff cannot now maintain an action based upon the original contract.

It is further contended that certain false or fraudulent representations were made by defendants to plaintiff in that it was represented that the title to said property would be taken in the name of Kouri instead of Whitney; that the representations of defendant in one of his letters, to the effect that "leases were not worth much in there yet", were false. The trial court found that these representations did not constitute fraud sufficient to avoid the contract, which finding is not against the clear weight of the evidence. To constitute actionable fraud it must be shown that the representations were material, false, and fraudulent, and that the party who relies upon them would not have entered into the contract but for such representations. Cooper v. Ft. Smith & W. Ry. Co., 23 Okla. 139. 99 P. 785. In our opinion the representations, even though false, are immaterial and of insignificant consequence.

Plaintiff further contends that he purchased from Dr. Harber another undivided 10 acres in said land at another time for the sum of $160; that Harber executed to him a quitclaim deed which he lost before it was recorded, and that the same 10 acres is included in the land deeded to defendant, Whitney, by Harber, and that Whitney had notice of said transaction at the time he received the deed; that by reason thereof plaintiff is entitled to be declared the owner of the undivided 10 acres. The evidence is not clear as to all the details of this transaction, and the question arises as to whether or not it was the intention of plaintiff to include this 10 acres with the land to be deeded to defendant, when he authorized Harber to make the deed. In view of the judgment of the court, it is apparent that the court made a finding to that effect. In view of all the facts in the case, in connection with the further fact that approximately four years elapsed from the date of the transaction complained of, and it is not shown that plaintiff made an effort to recover the 10 acres, either from Harber or the defendants, we cannot say that the finding of the trial court in this regard is against the clear weight of the evidence.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, BAYLESS, and BUSBY, JJ., concur. ANDREWS and WELCH, JJ., absent.