## AKERS v. RENNIE et al.

No. 27612.    March 8, 1938.

Ledbetter & Ledbetter, for plaintiff in error.

Marion Henderson, for defendants in error.

CORN, J. This is an appeal from a judgment of the district court of Garvin county, dissolving a temporary restraining order, denying an injunction and decreeing that any conveyances concerning certain property, made either by this plaintiff in error or her husband, should be set aside. The parties retain their positions as in the trial court, and will be referred to as plaintiff and defendant. The appeal arose in the following manner:

In 1925, one W. I. Akers, husband of the plaintiff, entered into a contract retaining the defendant, Rennie, to handle certain legal matters having to do with securing cancellation of drainage district tax assessments, and agreeing to pay a fee of $1,000 if successfully handled. Cancellation of the assessments was finally had and Rennie filed suit against Akers in 1930 to recover the fee.

It appears that in March, 1930, the property in question was subject to foreclosure and Akers bid the property in, receiving the sheriff's deed in his own name, which was recorded. In December, 1930, Akers deeded the property to the plaintiff. The suit against Akers was pending in the district court when this property was deeded to the plaintiff, and it appeared from her own testimony at the trial that she had knowledge of all circumstances prior to the deed to her.

The petition alleged that the defendant had caused execution to issue and the land had been offered for sale, which constituted a cloud upon her title. She therefore asked for a judgment enjoining and restraining the defendants from proceeding with execution and to have title quieted. A temporary restraining order was issued in her behalf. The defendant denied her ownership and set up that while suit was pending the property had been transferred to the plaintiff with the fraudulent intent to defeat collection of the judgment.

The plaintiff's claim was that she became the owner for a valuable consideration and denied that there was any transfer made to defeat judgment.

The matter was tried to the court, and it was found that Akers had fraudulently conveyed to his wife, plaintiff herein, and the court dissolved the temporary restraining order, denied the injunctive relief sought,

decreed that an order of sale issue, and that any conveyance made by the plaintiff or her husband concerning this property should be set aside.

Motion for new trial was overruled, and the plaintiff appeals, making eight assignments of error, which are condensed and argued under two propositions.

The first proposition argued by the plaintiff is to the effect that when land is sold under execution on the theory that it belongs to a judgment debtor, the true owner of the land can maintain an action to quiet title and enjoin the sale.

To support this proposition the plaintiff cites cases from this court: Love, Sheriff, et al. v. Cavett, 26 Okla. 179, 109 P. 553; Rader, Sheriff, et al. v. Gvozdanovic, 35 Okla. 421, 130 P. 159; and Maxwell v. Gillespey, Sheriff, 116 Okla. 68, 243 P. 497. Particular reference is made to the Maxwell Case. In that case, however, there was evidence that there was no fraud in the conveyance claimed to be fraudulent. The parties dealt in the open, and the evidence showed a full and complete consideration for the conveyance.

In the case at bar the circumstances wholly fail to substantiate the claim that the conveyance was, in all respects, made in good faith. It is to be noted that the money which the plaintiff alleged belonged to her and which was used to buy the property was paid to her husband directly, and was never carried in her name. The deed was taken in his name, and was not transferred to her or put of record in her name until the defendant's suit on the contract had progressed toward judgment. No matter how earnestly the plaintiff may urge that everything was carried out in an open manner, the facts remain that all dealings were carried on in her husband's name.

The proof here certainly indicates a fair-weather arrangement. Just so long as things went in a favorable manner there was no necessity for alarm. But, when more stormy circumstances were threatening, the need for putting things in order and making certain protective dispositions of the property became urgent, and necessary steps were then taken.

The trial court heard all the evidence and determined that the deed was void, and the rule announced by this court, supported by a multitude of decisions, is that in an equitable action the presumption is in favor of the trial court's judgment and it will not be set aside unless the judgment is against the clear weight of the evidence. Miller v. J. I. Case Threshing Machine Co., 149 Okla. 281, 300 P. 399; and Melton v. Whitney et al., 164 Okla. 220, 23 P.2d 660.

The plaintiff's second contention is that the burden was upon the defendants to prove that the execution of this deed to her was without consideration, executed with fraudulent intent to defeat Rennie in the collection of his judgment. To support this argument the plaintiff cites and quotes at length from Vacuum Oil Co. v. Quigg et al., 127 Okla. 61, 259 P. 858, and upon the authority of that case and the cases therein cited insists that the defendants wholly failed to show that the conveyance to the plaintiff was executed with any intention of defeating collection of this judgment.

However, in the third paragraph of the syllabus of the Quigg Case is contained the following language:

"The fact that the parties to a conveyance of real estate are husband and wife does not, of itself, establish fraud in the transfer, as against a creditor of the husband. **Such transaction, however, will be closely scrutinized to see that it is fair and honest and not merely a contrivance resorted to for the purpose of placing the husband's property beyond reach of his creditors, and such relationship may** properly be considered in connection with other evidence, facts, and circumstances tending to impeach the transaction."

It is apparent that the trial court in the case at bar fully considered all the facts and circumstances in connection with this matter, and concluded that this was an attempt on the part of the husband to defeat the collection of this judgment, and the trial court's judgment, under the authority of the cases cited, is not to be disturbed on appeal.

The plaintiff also raises the point that defendant's claim that the conveyance was fraudulent is barred by the two-year statute of limitations, the same being section 101, subdivision 3, O. S. 1931, since the deed in question was recorded December 3, 1930, and the levy was not made until September, 1933. The basis of this proposition lies in the plaintiff's insistence that the deed was a matter of record, and under the authority of McElhany v. Langston, 105 Okla. 221, 232 P. 442, the means of discovering the fraud was in the defendant's hands, the

380

public records being sufficient to put the defendant on notice.

This proposition, as to when the statute of limitations begins to run on a judgment creditor's claim, has been considered by this court numerous times in the past. This point was first decided in the case of A. J. Blackwell v. Hatch, 13 Okla. 169, 73 P. 933. In that early case this court held that the statute began to run from the time an execution on the judgment for the debt was returned, and not from the date of the alleged fraudulent transfer of the property sought to be subjected to payment of the debt.

In that case the court said that, as a usual thing, the statute began to run from the date of discovery of the fraud, but like all rules an exception existed, as, for instance, where A holds B's note for four years, and B fraudulently conveys his property to a third person in order to defraud A, the statute will not run against A before maturity of his note, since he would not be entitled to judgment in law before that time; hence, a creditor's bill cannot be maintained until after a judgment is recovered on the note and an execution returned. Therefore, the cause of action is deemed to accrue from the earliest time the creditor can, with due diligence, begin the particular action.

The Hatch Case, supra, cites Taylor, etc., v. Bowker, 111 U. S. 110, 4 Sup. Ct. 397, holding that the statute commences to run at the time of the return of the execution, and not from the time of entry of the judgment. The rule is reaffirmed in Ziska v. Ziska, 20 Okla. 634, 95 P. 254, holding that the rule is sound in both principle and reason. Otherwise, a debtor who was to be subjected to the claims of his creditors could, prior to the time when demand could be made upon him, transfer his property, bring notice to his creditors, and then after expiration of the statute and maturity of the creditor's claims, plead the statute which would make the statute a safeguard for fraud, rather than a means of prevention.

This rule, followed by the courts of other states, was again announced in the case of Indian Land & Trust Co. v. Owen, 63 Okla. 127, 162 P. 818, and in the more recent case of Rye v. McReynolds, 170 Okla. 640, 47 P.2d 897.

Judgment of the trial court affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, GIBSON, HURST, and DAVISON, JJ., concur. RILEY and WELCH, JJ., absent.