### JOHNSON et al. v. ROWE et al.

No. 27800. March 28, 1939.

Rehearing Denied May 2, 1939.

Ledbetter & Ledbetter, for plaintiffs in error.

Brown & Cund, for defendants in error.

BAYLESS, C. J. Mrs. Dorothy Johnson, the widow of Ivey Johnson, brought an action in the district court of Stephens county, Okla., against H. Rowe et al., to establish a constructive trust in and to a certain oil and gas lease to the extent of an undivided one-fourth interest, on behalf of herself and children. The judgment of the trial court was in favor of Rowe, and she appeals. Rowe cross-petitioned, and was denied the relief sought, but does not appeal.

Several propositions of law are argued, but the determination of these propositions turns, after all, upon the weight of the evidence. The judgment entered by the trial court was a simple denial of relief to either party. We think it best to set out a summary of the evidence at this point.

The deceased husband is referred to throughout the record by his given name, and this is spelled differently and results in much uncertainty. We shall refer to him as Ivey Johnson. Rowe is a physician, and resides at Denton, Tex. Johnson resided at Denton, and also Ardmore, Okla. A course of business relations had existed between them for years. It is the contention of the plaintiffs that each of these were joint ventures. It is the contention of Rowe that Ivey was his employee, and each of these transactions was his and Ivey simply rendered him services therein for which he was duly paid. This difference of view persists throughout the lease transaction involved. In December, 1923, Ivey introduced Rowe to one Gant at Ardmore, and from this resulted negotiations by which Gant and Johnson bought the lease in question. each to own one-half thereof. Rowe advanced all of the purchase price. Gant gave Rowe his note for $5,000, and later paid this note. At the time of the purchase, the lease had one gas well producing at· a depth of 1,800 feet. The parties advanced operating expenses, and drilled this well to about 2,100 feet, at which depth it produced oil. They then brought in another oil well at the same depth. From these wells oil was being produced in 1935, when this action was filed. It is the contention of the plaintiffs that Rowe agreed to carry Ivey for a one-half interest in Rowe's interest, and to turn it to Ivey when Rowe had been reimbursed from the lease for his expenditures. Rowe says Ivey was simply his employee, and he paid him by monthly salary for whatever services he rendered.

Plaintiffs introduced several witnesses, and we will set out the substance of their testimony. Will Williams, a brother of Mrs. Johnson, a resident merchant of Denton, Tex., and not on friendly terms with Rowe, was the first witness. He testified that a few months after the death of Ivey Johnson, which occurred in April, 1926, he was summoned to Mrs. Johnson's home in Denton, and there found her and Rowe. That Rowe had some memoranda with him, and proceeded to tell Mrs. Johnson and witness about the lease, and that Ivey was to have an interest in it when it paid out, and he (Rowe) felt that when it had paid out, plaintiffs would have a living income therefrom. He says this was the first he had ever heard of the matter, and also the last time he was consulted. We cannot tell whether Rowe denied this meeting, but he did deny making such statements. E. Dunlap, a business man of Ardmore, was the next witness. He testified that he knew Ivey and Rowe in connection with the construction of an ice plant at Ardmore, and the sale of it. That shortly after the death of Ivey, several of the interested parties met in a hotel room in Ardmore several times to discuss closing up the business incident to the sale of the plant, and in these meetings Ivey's affairs were discussed. He testified that Rowe told them Ivey had an interest in the lease when it had paid out. Rowe admitted these meetings, but denied making such statement. W. H. Gant, an Ardmore oil man and the purchaser with Rowe of the lease, was the next witness. He testified that Ivey introduced Rowe to him to originate the deal. and told of the transaction. He said that Rowe did not tell him that Ivey was to own an interest in Rowe's interest, but he understood so from what he heard. This testimony is hearsay. but no objection to it was made and both sides inquired of the witness regarding it. The next witness was Charles S. Lynch. known as Jack. an audi-

tor and former associate and employee of Ivey's in various interests. He testified regarding the meetings in the hotel room, about which Dunlap had already testified. He testified that Tom Johnson, Ivey's brother, was present, and talked to Rowe about Ivey's interest in this lease and offered to pay Rowe Ivey's share of the cost of the lease if Rowe would deed it to him (Tom Johnson) to hold for the plaintiffs. Rowe refused, saying that he had arranged with Ivey, before his death, to handle the matter and preferred to follow that course. Rowe said he was holding it for the widow and children, especially the children. Witness understood at that time the lease had not paid out. He testified that on later occasions when he would pass through Denton, Tex., on various trips into Texas, he would visit with Rowe at Rowe's office and discuss the status of the lease account, and on each of these occasions Rowe would tell him the lease had not paid out. On at least one occasion Rowe exhibited his account, and told witness he carried it as "Ivey's account." Rowe admitted the meeting in the hotel, and witness' visits, but denied the conversations regarding the lease. Mrs. Johnson was the next witness. She testified to numerous conversations with Rowe, after her husband's death, regarding the lease. She testified to at least one conversation between her husband and Rowe before her husband's death, in which conversation it was stated that her husband was to have an interest in the lease when it paid out. She said that the afternoon of the funeral and while they were yet at the cemetery, she broached the subject to Rowe in the presence of Tom Johnson, her brother-in-law, and Rowe said he would talk to her regarding it within a few days. Rowe denies this. She then testified to the conversation at her home when her brother, the witness Will Williams, was present. Rowe denies the substance of the conversation. She testified that she consulted Rowe from time to time from 1926 to 1930, and he told her each time that he was not yet clear on the lease; and that he held out hopes to her that the lease would clear itself in 1928 or 1929, but in those years he told her that owing to unforeseen difficulties in the nature of decreased oil prices and increased expenses the hope must be deferred. She introduced in evidence 12 exhibits, consisting of figures purporting to represent the condition of the lease account. These figures were on sheets of paper identified as printed prescription blanks of Rowe. She identified the hand-writing thereon as hers and Rowe's. Rowe denied these consultations, and denied furnishing the paper or the information purporting to constitute the figures thereon. He had no idea where she got the figures, and said the prescription blanks were printed by the drug store named thereon as an aid to its business, and not by him, and that such blanks were available to anyone. He denied furnishing them to her, and denied the writing thereon attributed to him. Mrs. Johnson said that in October, 1930, Rowe came to her with $47 in currency and said the lease had paid out and this represented her share of its earnings at that time; and that he paid her money each month thereafter through March, 1931, when he told her the lease was failing to pay a profit and there was nothing due her. Rowe denies this positively, and points to checks and to Gant and others for his share of the expense, which he issued to her in connection with loans, as indicating that he would have paid her by checks. It is an admitted fact that the lease paid out in 1930, and has been profitable since. She testified that she talked to him regularly thereafter and his statements to her always were the same, the lease was not producing a profit. Rowe denies this. She testified finally that she was visiting friends in Ardmore in 1935, and when they inquired of her concerning the income the lease was producing for her and her children, and she had told them what Rowe had reported to her, they expressed doubt and advised her to inquire of the company operating the lease (the purchaser of Gant's interest). The figures this company furnished her indicated that Rowe's statements to her were false. She thereupon employed counsel and brought this action.

Rowe denied most of the testimony of Mrs. Johnson and her witnesses, and in addition testified to the following: That at the time of Johnson's death he (Rowe) owed Johnson nothing, and instead that Johnson was indebted to him as evidenced by a note. This evidence was disputed by Lynch, the former bookkeeper, who testified that the note was given by Johnson to Rowe to cover up certain properties of Johnson, and on the face of the note it bears credits, attributed to specified items of personal property, equal to the face of the note. Rowe testified that Mrs. Johnson was penniless and he made her various loans thereafter, all evidenced by checks. In the plaintiffs' case in chief these loans were denied, but eventually Mrs. Johnson admitted them. Rowe cross-petitioned for judgment for these various amounts, but the trial court denied

him relief, and he has not appealed. We have set out his testimony in this respect in order to show what his defense was.

The parties do not disagree as to the controlling rules of law, and each has cited many cases dealing with constructive trusts, weight of the evidence, the presumptions inhering in the judgment of the trial court; and particularly does Rowe depend upon the equitable defense of laches.

We believe the rule relating to the proof of the existence of a constructive trust stated in Hayden v. Dannenburg, 42 Okla. 776, 143 P. 859, is the proper rule and the one applicable to this action. It is:

"A constructive trust may be established by parol evidence, but the law, for the safety of titles, requires that the proof should be of the most satisfactory, and trustworthy kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity would be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive."

The duty of first determining whether the evidence of one seeking to establish a constructive trust by parol evidence meets the test just stated naturally falls upon the trial judge. The action is one of equitable cognizance, and the trial judge sits without a jury unless he wishes a jury in an advisory capacity. Therefore, on appeal from the judgment in a case of this nature, the judgment of the trial court must be scrutinized by this court, but only in the light of the well-known rules. One rule may be stated thus:

In cases of equitable cognizance the appellate court will examine and weigh the evidence, but the findings and judgment of the trial court will not be disturbed on appeal unless it appears that such findings and judgment are against the clear weight of the evidence. Melton v. Whitney, 164 Okla. 220, 23 P.2d 660, and numerous cases cited in Okla. Dig. (West) App. & Error, 1009 (4).

In determining the weight of the evidence, there are involved considerations in respect of which the trial judge is better able to judge than this court. He has the witnesses before him, he can judge of the credibility of their evidence in every aspect, and, being in the very atmosphere of the trial, can exercise a judgment which ought not to be disturbed except upon the clearest showing of an error in judgment.

The evidence in this case is in sharp conflict on virtually every issue material to the judgment. In our opinion the rule set out in Ransom v. Fields, 169 Okla. 68, 35 P.2d 935, applies:

"The finding of a district court in an equity case will not be disturbed on appeal simply because there is a conflict in the testimony, or for the reason that it is possible to draw another conclusion from the evidence."

The issue is paramount in this action. The law on the subject may be ever so plain, but the plaintiffs have a certain burden which the trial judge decided they did not sustain, and we are unable to say that this judgment is against the clear weight of the evidence. Other issues need not be noticed.

Judgment affirmed.

RILEY, OSBORN, CORN, GIBSON, and HURST, JJ., concur. WELCH, V. C. J., and DAVISON and DANNER, JJ., absent.