**GUARANTEE RESERVE LIFE IN-
SURANCE COMPANY, Plaintiff,**

v.

**June D. HARDIN and World Market
Centers, Inc., Defendants.**

**No. 72–795–D.**

United States District Court,
W. D. Oklahoma,
Civil Division.

June 25, 1974.

Clyde A. Muchmore, Oklahoma City, Okl., for plaintiff.

Gene A. Castleberry, Oklahoma City, Okl., William O. Callaway, Jr., Ft. Worth, Tex., for defendants.

MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff has interplead $100,000.00, the benefits of a life insurance policy it issued on the life of Milton Hardin (Hardin) as the insured. Hardin was the named owner of the policy. His wife, Defendent June D. Hardin, was the named beneficiary. Hardin became an employee, director and officer of World Market Centers, Inc. (WMC) in March, 1971. On October 26, 1971 the above policy was issued by Plaintiff. The first year premium was paid by WMC. The

policy was brokered to Plaintiff by Harlan Thayne Davis (Davis), an insurance agent who served WMC. The policy when issued was delivered by the broker to the President of WMC and it thereafter remained in company possession. On December 6, 1971 Hardin terminated from WMC. Hardin and WMC entered into a written termination agreement. The agreement made no mention of said policy of insurance. On February 8, 1972 Hardin died. Defendant June D. Hardin, as the named beneficiary, claims the policy benefits. WMC took bankruptcy on October 17, 1972 and its Trustee in Bankruptcy claims the policy benefits through the imposition of a constructive trust.

WMC had a general and apparently unofficial plan for "key-man insurance" i. e., life insurance covering three of its key officers. One was the President, Jim Brewer (Brewer), who owned one-half of the company, the other was Joseph Stephens (Stephens), who owned the other half of the company. The third official was Hardin who had become a Director, Secretary-Treasurer and Comptroller of the company. It appears that under this general plan WMC would pay the premiums for the key-man insurance and a part of the insurance was to be owned by and payable to the company as beneficiary and a part was to be owned by the insured and payable to the families of each of said company officials as beneficiaries of the policies.[1] There were no written official Board of Director Resolutions or Minutes in this connection. It seems that the owners of the company merely agreed on the plan as controlling Board Members. The initial efforts to get $1,000,000.00 in life insurance for each Brewer and Stephens and $500,000.00 for Hardin failed. The application were rejected. It was then agreed that an effort would be made by Davis to obtain insurance for them in $100,000.00 increments. Davis prepared and handled the several applications. Insurance was obtained for Brewer but apparently none for Stephens. It appears that Stephens left the company around this time. The insurance obtained for Brewer was payable to his wife and family as beneficiaries. Several applications, at least three in number, were sent in by the broker for Hardin. In one (to Constitutional Life Insurance Company) the company was the owner and named beneficiary. In the application to Investors Life Insurance Company, June D. Hardin was the named beneficiary. In the application to the Plaintiff, Hardin was shown as the owner and his wife, Defendant June D. Hardin, was the named beneficiary. This was the only application on Hardin which resulted in the issuance of a policy. Davis delivered this policy when issued to Brewer, the President of the Company, and said policy by reference to the attached Application showed Hardin

[1]. In explanation of why his wife was the beneficiary of some life insurance, Brewer testified that he and Stephens had an agreement that some life insurance was to name their wives as beneficiaries on the basis that if one died his wife would receive the insurance benefits and would then deliver the company stock of her deceased husband to the company or other owner at no cost to the company or surviving owner. The Court does not believe this testimony for there was nothing produced in writing to support such an agreement between Brewer and Stephens and it is unbelievable that prudent business men or even less would have such an agreement, understanding or arrangement in which their wives and possibly their heirs would be vitally involved without reducing the same to an enforceable written contract. In addition, no insurance was even obtained on Stephens, he left the company and notwithstanding these facts apparently Brewer took no steps to eliminate his wife as a beneficiary of some of his life insurance, the premiums of which the company paid as in the case of Hardin.

It was brought to the Court's attention that Defendant June D. Hardin and her husband while he was an officer of the company personally guaranteed a company obligation which has resulted in a $30,000.00 judgment against her but there is no evidence before the Court that Plaintiff's insurance policy involved herein was either applied for or issued because of or as a result of this personal guaranty.

to be the owner and his wife, Defendant June D. Hardin, as the beneficiary. Davis testified that he advised Brewer of such ownership and beneficiary when he delivered the policy. After Hardin terminated, some contacts were made between he and Davis about Hardin replacing the policy with a lesser amount of insurance. Apparently this would apply to future years as the premium had been paid for the first year. However nothing ever developed here. Sometime after termination, the company attempted to get Hardin to assign the policy to it, but this did not occur. The evidence reveals that Hardin was complaining about a $90.00 airplane ticket which he had paid for a trip which he claimed was for company business and which WMC refused to reimburse on the basis the trip was not on company business. Thus, when Hardin died he was the named owner and his wife was the named beneficiary of the policy. The premium for the first year, during which period Hardin died, had been paid by the company and the policy had been delivered to and was kept by the company at all times. Hardin or his representative, as he died before his return for 1971 was due, did not report such premium as income to him for tax purposes for 1971. Brewer, as above-stated had life insurance in which his wife was the named beneficiary with the premiums therefor having been paid by the company.

The Oklahoma Supreme Court has defined a constructive trust as being such as is, "raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it." *Marshall v. Amos*, 471 P.2d 896 at 905 (Okl.1970).

The burden of proof is on one who seeks to establish a constructive trust. *Johnson v. Rowe*, 185 Okl. 60, 89 P.2d 955 (1939).

In *State of Ohio v. Four Seasons Nursing Centers of Am., Inc.,* 465 F.2d 25 (Tenth Cir. 1972), it was held in regard to the evidence required to establish a constructive trust as follows:

". . . The quantum of evidence required by Oklahoma for imposition of a constructive trust is substantial. Mere preponderance of the evidence is not sufficient to establish a constructive trust. Rather, it must be established by evidence which is clear, definite, unequivocal and satisfactory. The evidence must lead to but one conclusion, or leave no reasonable doubt as to the existence of the constructive trust."

The Court finds that the evidence does not establish fraud on the part of Hardin. The evidence fails to show that Hardin was guilty of fraud when the application for Plaintiff's policy was filled out and sent to Plaintiff. Davis, who was the insurance broker for WMC, testified to no fraud on the part of Hardin in the manner in which the Hardin applications were filled out nor did Brewer. The pattern of Hardin's wife being named as beneficiary therein followed the same pattern as for Brewer. This was also in keeping with company policy where some insurance was to name the company as beneficiary but some insurance was to name the wife and family as beneficiaries. Here again as to the applications for insurance, this policy was followed by Davis on both Hardin and Brewer. Though the Court is at a loss to understand why the insurance policy was not dealt with by the parties when they entered into the Hardin termination agreement, there is no evidence of fraud on the part of Hardin which brought about this void.

After termination, it appears that there was a company request of Hardin for an assignment of the policy to the company but he did not assign the same, nor did he take for himself through the broker a policy in a lesser amount. Apparently he either had these matters un-

der consideration, was not agreeable to the assignment or was awaiting settlement of his travel expense claim against the company which was in dispute. But, the evidence does not establish fraud on the part of Hardin either in the acquisition or retention of the policy in which his wife was the named beneficiary and for which the company paid the first year's premium at a time when he was a key employee of the company.

Finding no fraud, the Court still should consider under the circumstances if it is against equity that the policy proceeds should be retained by or paid to June D. Hardin, as named beneficiary of the policy.

In this connection, the Court finds and concludes that WMC has failed to meet its burden of proof necessary to impose a constructive trust which as stated above is an onerous burden—a burden requiring evidence which is clear, definite, unequivocal and satisfactory—evidence which must lead to but one conclusion or leave no reasonable doubt as to the existence of the constructive trust.

In view of Hardin being a key employee of the company at the time the Application was forwarded, in view of company policy, practice and pattern of buying some life insurance on key employees in which their wives and families were to be the beneficiaries, in view of the insurance policy not being included or mentioned in the termination agreement and in view of the evidence of the discussions with the broker after termination about Hardin taking a lesser policy, the Court finds and concludes that WMC has failed to establish the existence of facts necessary to impose a constructive trust in its favor for the insurance benefits by clear, definite, unequivocal and satisfactory evidence and evidence which leads to but one conclusion or leaves no reasonable doubt as to the existence of the constructive trust.

Counsel for Defendant June D. Hardin will prepare an appropriate judgment based on the foregoing, submit the same to opposing counsel and then to the Court for signature and entry herein.