TURK et al. v. WARR et al.

No. 28713. April 14, 1942.

Rehearing Denied June 30, 1942.
Application for Leave to File Second Petition for Rehearing Denied Sept. 15, 1942.

*128 P. 2d 835.*

Embry, Johnson, Crowe & Tolbert, Calvin Boxley, and A. Leonard Brougham, all of Oklahoma City, for plaintiffs in error.

Gibson & Savage, of Oklahoma City, Green & Farmer, of Tulsa, Priest & Belisle, of Oklahoma City, and George W. Ball, of Webb City, Mo., for defendants in error.

DAVISON, J. This action is presented on appeal from the district court of Oklahoma county. It was instituted in that court on the 13th day of January, 1937, by A. B. Turk, Lon B. Turk, and A. H. Richards, as plaintiffs, against George D. Warr and R. Carl Larkins, individually; A. C. Fletcher, individually and as receiver for the estate of Larkins and Warr, a copartnership composed of R. Carl Larkins and George D. Warr; Hugh Hodges Drilling Company, a corporation; Hugh B. Hodges, individually and as president of the said Hugh Hodges Drilling Company and the Globe Oil & Refining Company, a corporation.

The plaintiffs sought to be declared the equitable owners of and entitled to the legal title of a designated five-acre drilling location in what is described as the Fair Park lease for oil and gas, including an oil well then being drilled on the location. The five-acre drilling location was selected by the plaintiffs pursuant to an asserted right to make a choice of location alleged to exist in accordance with an oral agreement and understanding between the parties.

It is contended that the defendants Larkins and Warr acquired the lease for the mutual benefit of themselves and the plaintiffs, and pursuant to an agreement as to how these benefits should be apportioned, one phase of which agreement related to the location here involved and gave the plaintiffs the right to select such location.

The defendants, consisting of Larkins and Warr and their successors in interest, admit in substance the existence of a prior oral understanding by which the plaintiffs were to receive a $30,000 payment in oil from the first well drilled, that is, a payment of that sum contingent upon production and payable from a fractional portion of the oil produced (in connection with which payment no dispute exists in this case) and a drilling location, that is, a portion of the tract large enough for them, the plaintiffs, to drill upon.

They deny, however, that the plaintiffs were by contract given the right to select or designate the location, but assert that such location was to be determined by them, the defendants, and was so determined at another point on the lease. They specifically contend that no portion of the oral agreement gave the plaintiffs the right to designate the location which they are here seeking to enforce.

It is at once apparent that the parties to this controversy recognize the existence of an agreement by which the plaintiffs acquired or were entitled to acquire a beneficial interest in the lease when the same was purchased.

It is equally apparent that the determining factor in this controversy is the terms of the agreement rather than the existence thereof. The particular portion of the agreement with which we must deal is that relating to a drilling location on the lease for the plaintiffs and the method to be adopted in choosing same.

It is important to notice in connection with this action that the plaintiffs are asserting and seeking a judicial determination and enforcement of a particular right asserted by them to exist rather than a judicial determination of what rights exist under their arrangement with the defendants. Thus a denial of relief in the action does not constitute a specific determination of the nonexistence of enforceable rights under the lease.

The cause is of equitable cognizance. It was tried to and determined by the court without the intervention of a jury. The decision was for the defendants, and plaintiffs have appealed, thus pre-

serving the order of appearance in this court.

The equitable nature of the action imposes upon this court the duty of weighing the evidence on appeal and the correlative duty of sustaining the determination of the trial court on issues of fact unless the same is against the clear weight of the evidence. Galloway v. Loffland, 144 Okla. 176, 289 P. 774; Hivick v. Turben, 77 Okla. 230, 187 P. 1094.

It is appropriate to observe in connection with the testimony in this case that evidence to establish a resulting or constructive trust resting in parol must be clear, convincing, and unequivocal and of such character to disclose the rights and relations of the parties. Johnson v. Rowe, 185 Okla. 60, 89 P. 2d 955; Babcock v. Collison, 73 Okla. 232, 175 P. 762; Hayden v. Dannenburg, 42 Okla. 776, 143 P. 859.

The trial court at the conclusion of the cause and in connection with the rendition of judgment orally analyzed the evidence and stated its conclusions in an opinion which was transcribed and incorporated in the record. It is appropriate to consider this opinion. Rogers v. Harris, 76 Okla. 215, 184 P. 459. The court stated:

"The Court: I understand the nature of this action to be one in which the court is asked to declare that this particular well and the location upon which it is being drilled, including this five (5) acre tract which is described by metes and bounds, to be the property of the plaintiffs and to quiet title as against all of the defendants in the action of course, there is also a prayer in the petition, a prayer for the marshalling of assets and the determination of the rights of the various lien holders and such defendants as the Hodges Drilling Company and the Globe Drilling Company?

"Mr. Green: Globe Oil & Refining Company.

"The Court: Globe Oil & Refining Company and it isn't an action in which the court is asked to determine the rights and equities of the parties in and to this leasehold interest; it seems to me that it's in the nature of an action, that is, it partakes of some of the elements of an action for specific performance in that it is contended that by reason of the relationship between the parties, a trust is impressed upon this particular five (5) acres and asks the court to enforce that trust, that is, the trust which the law imposes by reason of their agreements; it seems to me that it does partake, to a large degree, of the elements of an action for specific performance.

"Now, when this case was presented on demurrer, I had doubts at that time as to whether or not there was sufficient definiteness in this testimony to warrant the court in impressing a trust upon these five (5) acres, which it is necessary to do before the court can say that this well belongs to the plaintiffs and concluded that for the purposes of a demurrer, the evidence probably was sufficient. I am still of the opinion that I entertained last evening.

"I believe the court cannot say that there has been a trust impressed upon this particular piece of land; that the testimony has been sufficiently definite and certain to convince the court that this particular piece of land and this particular well was included and embraced within the agreement which imposes a trust upon it; and I am not sufficiently satisfied of this from this testimony. I think it is very doubtful whether or not there was any understanding between these parties, either that the plaintiffs should have the right to choose and select the first location after the drilling of No. 1 or that if it did, that there was any agreement or understanding that they might select this particular tract.

"It is the judgment of the court that the prayer of the plaintiff's petition be denied."

There are other expressions of the trial court made prior to the closing argument of counsel which will not be herein quoted, since they were uttered before the court's recollection had been refreshed by counsel in argument of the case. Some criticism is made by counsel for the plaintiffs of accuracy of statements previously made by the court, but we must presume that such inaccuracies, if any, were called to the

256

trial court's attention during the arguments and did not constitute a determining factor in the case.

The application of the previously quoted opinion of the trial court is more clear if we note at this point some of the salient facts in the case. One well had already been drilled on the leased premises, which covered approximately 36 acres. It was from the production of this well that the plaintiffs became entitled to receive the $30,000 payment in oil previously alluded to in this opinion.

This first well, however, did not prove as profitable as had first been expected, and for some time after its completion little interest was shown in the further development of the lease by either of the parties to this controversy. Subsequently, other developments in the neighborhood revived interest and made it appear that more profitable production could be accomplished by further drilling, and that the best location for such drilling would be on a location in the southwest corner of the lease and west of the geological fault line of the formation from which oil is produced in the Oklahoma City field, which fault line traverses the leased premises here involved.

In accordance with this conclusion arrangements were made by the defendants to drill a well on the location indicated.

In the meantime the defendants Larkins and Warr, or rather their properties and other assets, had been placed under receivership by the district court of Oklahoma county, and prior to the development of the location above referred to, various persons having claims against them had presented the same. The plaintiffs had done so, but in the claim failed to mention the drilling location now claimed by them.

Subsequent to the revival of interest in the development of the lease (to be exact, on October 12, 1936) they (the plaintiffs) served notice in writing of their selection of their drilling location

in controversy, pursuant to their asserted right of selection. This action followed.

Our review of the evidence discloses that at the time the lease was acquired by Larkins and Warr, there existed an agreement resting in parol and based upon certain considerations which need not be here reviewed, by which the plaintiffs were to have a beneficial interest in the lease consisting of the payment in oil from the first well drilled and a drilling location. The limitations on the right to choose and the method of selection are the controverted questions in this case and upon these questions there is a sharp conflict in the evidence. The various evidentiary facts are carefully analyzed by the parties in their respective briefs, which are quite voluminous. In analyzing the evidence on the controversial points the plaintiffs, after reviewing the testimony favorable to their theory, especially that of Lon Turk, who appeared as one of their principal witnesses, say with reference to the testimony of Mr. Larkins, the opposite party in the negotiation of the parol agreement, that:

". . . The testimony of Larkins which, though evasive and fragmentary, is confirmatory of Turk's testimony that such agreement definitely provided that *plaintiffs should have their own choice* of the drilling location for such second well."

The testimony of Mr. Larkins seems to be more specific on the point than the brief indicates. He stated as a witness:

". . . They said, 'We are not willing now to close this deal for a thirty thousand dollar oil payment, we want the location and we want our choice of the location or we want the right to choose whatever location we take' and I said, 'Now, if we give you boys a location, we will reserve the right to pass on and select the location on the one selected or we will object to this, Mr. Warr and I will object to that, and they said 'Why?' and I said, 'Well, for one reason, it isn't fair for you to select a location and secondly, you might select one right up against our No. 1 well and drain our No. 1 well; there would be no

advantage in us giving you that power or that right.' 'So,' they said, 'All right, you select the location.' I said, 'All right, now, here is the deal: *You have a location coming east of the fault and north of this well, a reasonable distance, immediately north, after the completion of our Larkins and Warr No. 1 well, if you want to take it and drill a well on it and prove up the rest of our forty acre lease to the north; . . .'* " (Emphasis ours.)

It will be noticed that the location determined, as reflected by this testimony, was not the location now claimed. The defendants call our attention to other features of the case tending to corroborate this testimony. These corroborating features, as, for instance, the failure to make a claim of the "right to a location" in the receivership or upon a completion of the first well, are of a negative character and subject to explanation. Their evidentiary value in this case is not great.

However, in view of the positive testimony of Larkins, which needless to say is contradicted, and the surrounding circumstances in this case, and considering also, of course, the opportunity of the trial court to observe the conduct and demeanor of the witnesses, we are unable to say that the decision of that court is contrary to the clear weight of the evidence.

The argument of the plaintiffs in error is divided in their brief under several propositions, all of which gravitate around the hypothesis of a favorable decision on the issue of fact herein reviewed. Our decision upon the basic fact being unfavorable to the plaintiffs, it follows that a discussion of the dependent issues is unnecessary and that the judgment and decision of the trial court must be, and is hereby affirmed.

WELCH, C. J., and GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., and RILEY, OSBORN, and BAYLESS, JJ., absent.