KEMP v. STRNAD (two cases).
Nos. 35401, 35402.

Supreme Court of Oklahoma.
March 16, 1954.

Meacham, Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

Arney & Barker, Clinton, for defendant in error.

ARNOLD, Justice.

Charles Strnad as executor of the estate of Emma Harbarth, deceased, filed two suits in the District Court of Custer County against Hermine Kemp to recover certain items of personal property allegedly delivered to Hermine Kemp by plaintiff's deceased in trust. Two causes of action were set up in the first suit and four causes of action in the second suit. The two cases were tried simultaneously to the same jury

with separate instructions in each case and the jury rendered separate verdicts in each case. The two causes have been consolidated for briefing here.

The first suit was brought against both Hermine Kemp and her husband, Carl Kemp. Inasmuch as demurrer to the evidence was sustained as to Carl Kemp and no error is alleged as to this ruling, no further mention need be made of him as a defendant. In the first cause of action in the first case plaintiff alleged that defendant Hermine Kemp was the daughter of the deceased Emma Harbarth; that on June 18, 1945, the defendants for a good and valuable consideration made, executed, and delivered their promissory note to Emma Harbarth, as follows:

"$5,000. Promissory Note. Mitchell, South Dakota, June 18, 1945.

"For value received, we, the undersigned, hereby promise to pay to Emma Harbarth, of Stickney, South Dakota, Route One, the sum of Five Thousand Dollars ($5,000.00) to be paid as follows, Three Hundred Dollars ($300.00) each year, without interest, on January 1st, beginning January 1, 1946, until the whole amount of the note is paid, or until the death of the payee. It is hereby understood by and between the parties hereto that upon the death of the Payee, this note shall become void and be cancelled, for the reason that the signer Hermine Kemp is the daughter of the payee, Emma Harbarth.

"Carl Kemp
"Hermine Kemp"

That no part of said note has been paid, and that there is now due and owing the sum of $1,800 thereon, and prayed for judgment for the sum of $1,800.

In his second cause of action in the first suit plaintiff alleged that for many years the deceased had reposed great trust and confidence in her daughter Hermine and faith in her business ability and had delivered to her daughter certain moneys to be held in trust for deceased Emma Harbarth and invested and reinvested for her use and benefit and that her daughter accepted such moneys in trust and agreed to account for and pay over on demand the moneys so received; that this agreement was oral, so far as could be ascertained; that at some time prior to May 14, 1945, said defendants received from Emma Harbarth under said trust agreement the sum of $5,000 which said moneys were placed by defendants on time deposit in the Oklahoma National Bank of Clinton; that defendants have commingled said moneys with their own and converted same to their own use and benefit, have refused to account for same, and have breached and repudiated said trust agreement, and prayed judgment for $5,000 with interest from May 14, 1945. Demurrers were filed and overruled. Answer was by verified general denial. When the cause came on for trial defendant renewed her demurrer to the petition and the demurrer was sustained as to plaintiff's first cause of action, and overruled as to the second cause of action, to which ruling defendant excepted. Although the record shows no exception by plaintiff to the order of the court sustaining demurrer to the first cause of action the journal entry of judgment recites that he did so except.

In the second case, first cause of action, plaintiff made the same allegations as to the trust relationship existing between Emma Harbarth and her daughter Hermine Kemp as was alleged in the second cause of action in the first case above mentioned, and further alleged that shortly before the death of Emma Harbarth in September, 1948, defendant Hermine Kemp obtained possession of five Postal Savings Certificates, each in the amount of $500, belonging to deceased, and that defendant refuses to surrender possession thereof, and prays for judgment ordering same delivered up or for the value of same in lieu thereof.

In his second cause of action, second case, plaintiff readopts all allegations of the trust arrangement between deceased and defendant and alleges that under such trust agreement defendant obtained from deceased possession of six $100 U. S. Bonds, which she refuses to deliver up, and prays

that same be delivered up to plaintiff's possession or for the value of same in lieu thereof.

In his third cause of action, second case, after adopting the allegations as to the trust arrangement contained in his first cause of action, plaintiff alleges that deceased had entrusted to defendant the sum of $5,000 for investment, which sum was placed on time deposit in the Farmers National Bank of Elk City; that defendant has commingled said moneys with her own funds and converted same to her own use and benefit and prays judgment for said sum with interest from December 1, 1944.

In his fourth cause of action, second case, plaintiff realleges all his allegations as to the trust agreement contained in his first cause of action and further alleges that under said agreement defendant received on or about January 2, 1935, the sum of $6,000 from deceased and her deceased husband to be held in trust by her for them; that defendant has commingled same with her own funds and converted same to her own use and benefit, and prays for judgment for $6,000 with interest from January 2, 1935. Demurrers to each cause of action were overruled. Answer was a verified general denial.

As above noted, both cases were tried simultaneously to the same jury, and the record of testimony in each case is the same. Plaintiff's evidence reasonably tends to show in the second cause of action, first case, that Emma Harbarth and her deceased husband had lived for many years in South Dakota and had acquired considerable real and personal property; that she and her deceased husband had three children, a son, who died unmarried and without issue in about 1938, a daughter Ella Strnad, and a daughter, Hermine Kemp, defendant here; that Ella Strnad had a son, Charles Strnad, the plaintiff here; that Hermine Kemp had two daughters; that prior to her death Emma Harbarth had lived at her home in South Dakota and her daughter Ella Strnad and grandson Charles Strnad had lived with her; that Hermine Kemp and her husband lived in Clinton; that Emma Harbarth broke her leg in June, 1948; that because Ella Strnad could not care for her she was flown to Clinton to Hermine's home to be cared for; that she died six days after she came to Clinton; that after her death Ella Strnad found among her mother's papers a last will and testament in which she devised 320 acres of land in South Dakota to her grandson, Charles Strnad, bequeathed all the rest and remainder of her property, consisting of household goods and personal property, to her daughter, Ella Strnad, appointed Charles Strnad executor, and bequeathed the sum of $10 to her daughter, Hermine Kemp, with the statement that no more property was given Hermine for the reason that she had been given her just share of deceased's estate theretofore; that this will was admitted to probate in Aurora County, South Dakota, and to probate as a foreign will in the County Court of Custer County; that the records of the Oklahoma National Bank at Clinton showed receipt on April 8, 1944, of a $5,000 draft remitted by Emma Harbarth, made payable to Carl Kemp and endorsed by him; the issuance by Oklahoma National Bank on April 8, 1944, of a certificate of deposit for one year, said certificate being made payable to Emma Harbarth or Hermine Kemp; that this certificate was endorsed by Emma Harbarth on April 9, 1945, cancelled by the bank, and another certificate of deposit for one year in the amount of $5,000 issued in lieu thereof; that upon maturity this certificate was endorsed by Hermine Kemp and another certificate in the same amount issued for another year; that upon maturity on April 9, 1947, this certificate was endorsed by Hermine Kemp and cancelled, a new certificate in the same amount being issued; this certificate upon maturity was endorsed by Hermine Kemp and another issued; that this last certificate, which matured April 9, 1949, was endorsed by Hermine Kemp and the proceeds thereof, $5,050 (the amount of the certificate plus interest at 1% for one year) was deposited to the checking account of Hermine Kemp, less bond $3,750, leaving a balance of $1,300 in the checking account; that in April, 1949, Hermine Kemp purchased $5,000 worth of U. S. Savings Bonds, at a cost of $3,750, having same made payable to her

daughters; that a receipt dated May 14, 1945, signed by Hermine Kemp and Carl Kemp stating: "Have the $5,000 in the Oklahoma National Bank for 1 year on Emma Harbarth & Hermine Kemp and the certificate in my safe." was found among deceased's papers in her safe after her death; that Carl Kemp told plaintiff before deceased's death to bring deceased to Clinton, that deceased had from $12,000 to $13,000 there which was more than enough to take care of her; that nothing was found among deceased's papers indicating that any part of this money had been paid to deceased; that deceased told the attorney who drew her will for her that she had property in Oklahoma; various memoranda in deceased's handwriting mentioning a $5,000 certificate in Oklahoma National Bank, Clinton, "for safekeeping", and that it was held by Hermine Kemp were introduced; that shortly before her death deceased told her attorney that she had turned over to Hermine some of her property in Clinton and she wanted him to recover it from Hermine; that he asked for a list of such property and thereafter she mailed him a memorandum which listed, among other things, this $5,000 certificate in Oklahoma National Bank; that she told her attorney the reason she sent money to Hermine to be invested in Oklahoma was so that the people around her home town would not know how much she had. Demurrer to the evidence on this cause of action was sustained as to Carl Kemp and overruled as to Hermine Kemp.

On the first cause of action, second case, plaintiff's evidence reasonably tends to show that defendant came into possession of and still retains possession of 5 Postal Savings Certificates, made payable to Emma Harbarth, each in the amount of $500, and that defendant had filed petition for appointment as special administratrix of deceased's estate in the County Court of Custer County alleging that deceased died a resident of that county, that she left no estate except the nominal legal title to said postal savings certificates.

On the second cause of action, second case, plaintiff's evidence reasonably tends to show that deceased left certain memoranda in her own handwriting showing that she had delivered six $100 U. S. bonds to defendant, and a receipt from defendant signed by her acknowledging receipt of six $100 U. S. Bonds.

On the third cause of action, second case, plaintiff's evidence reasonably tends to show that the records of the Farmers National Bank of Elk City shows a joint savings account opened by Hermine Kemp on December 1, 1944, in the name of Emma Harbarth and/or Hermine Kemp with right of survivorship; that the words "with right of survivorship" were written on the ledger sheet and the savings pass book by the president of the bank; that the account showed various deposits representing the interest accumulated on the principal, amounting in all to $82.50; that on September 30, 1946, Hermine Kemp wrote a check on this account transferring it to her checking account; that only Hermine Kemp had authority to check on her personal checking account; that she wrote various checks on this checking account until July, 1950, when the account was exhausted; that a receipt in defendant's handwriting and signed by her was found among deceased's papers acknowledging receipt of the $5,000 and stating that same was deposited in a savings account in the Farmers National Bank of Elk City; that this same savings account was mentioned on all the memoranda in deceased's handwriting which were introduced into evidence as. being held by Hermine for deceased; that this savings account was also mentioned in the memoranda which deceased sent her attorney shortly before she died, as mentioned above. All the memoranda introduced are not entirely explicit and some are written partly in English and partly in German script, but all of the memoranda tend to show numerous business transactions, besides the ones involved in the two cases here, between the deceased and Hermine Kemp and tend to show that Hermine received several large loans and various other sums of money from deceased and that Hermine collected payments on various mortgages which deceased owned

in Oklahoma and remitted such sums to her mother.

On plaintiff's fourth cause of action, second case, his evidence reasonably tends to show that Hermine Kemp received from her mother and father on January 2, 1935, the sum of $6,000 cash, as evidenced by a receipt signed by her found in deceased's papers, and also this same sum is mentioned as being in Hermine's hands in all the memoranda heretofore mentioned.

Plaintiff's evidence further shows that the half section of land devised him by his grandmother is worth $12,000; that he holds legal title in trust to another half section for his mother, Ella Strnad, which is worth $16,000; that plaintiff had received as a gift from his grandmother before her death a tractor, a used Ford automobile, and $300 worth of oats; that the total value of both the land and the personal property which he and his mother received from the deceased's estate was $29,850; that Hermine Kemp had received 800 acres of land in South Dakota before her mother's death which was worth $65,200, land in Colorado worth $2500, cash, as evidenced by receipts (in addition to the $6,000 here sued on) in the amount of $10,600; the release of the $16,000 mortgage given before her father died; a $10,000 mortgage which had been owned by deceased.

Defendant's demurrers to all these causes of action were overruled and exceptions saved.

Defendant's evidence reasonably tends to show that defendant had in her possession six $100 U. S. Bonds, made payable to Edward Harbarth, payable on death to Hermine Kemp; that she had received these in 1946 from her mother; that she borrowed $6,000 from her father on a building in Cheyenne, Oklahoma; that her father took a mortgage on the building as security for the loan; that later she borrowed $10,000 on another building; that thereafter her father told her he was giving her $8,000, to be applied to discharge the $6,000 loan and $2,000 on the $10,000 loan; that her father gave her a release on the mortgage securing the $6,000 loan; that later he released the remaining $8,000 as a gift; that her father told her he was giving her these amounts because he had given like amounts to her sister and brother who was then still alive; that she got the Postal Savings Certificates about the last part of June, 1948, after her mother went to Clinton, a few days before her death; that her mother handed them to her and told her they were hers; that she now owns a mortgage on the McAbee business building in Clinton which was formerly owned by her mother; that she owns 5 quarters of land in South Dakota which was deeded to her by her mother; that she had theretofore sold a half section of land in South Dakota for $19,200; that she and her husband own jointly several properties in Oklahoma; that she never put any money out for investment for her mother; defendant offered to prove by her own testimony that all of the items involved in all of the causes of action were given by her mother to her, which offer was refused by the court as being a transaction with a deceased person; that she married her husband in 1910 at which time he owned some 540 acres of land and had other business property and cash in Clinton; that she and her husband during their marriage had acquired other business properties, including a hotel in Clinton and one in Cheyenne; that they saved what they made and invested it; that she had paid the Harbarth estate everything she owed it; that Emma Harbarth gave $5,000 to Carl Kemp, defendant's husband, and told him to give it to defendant, that it was for defendant; that he did so and defendant put the money in the Clinton bank; defendant offered to prove by her husband that deceased gave defendant the six $100 U. S. bonds theretofore introduced in evidence in September, 1946, and at the same time gave her the $5,000 then on deposit in the bank at Elk City, which was refused by the court on the ground that the witness was the husband of defendant, was not her agent, and was therefore incompetent; later this same witness did testify that both $5,000 transactions were gifts; that defendant's father had told Carl Kemp that he had spent $18,000 on the other daughter, Ella Strnad;

and that was why he was giving approximately the same amount to Hermine.

On rebuttal plaintiff introduced additional letters from defendant to deceased mentioning various mortgages which defendant was handling for her mother and telling her of various people who wanted to borrow money on property, and one letter telling her that she had deposited the $5,000 in the Elk City bank at 1¼% interest; that that was the best rate she could get for it; and a second letter the next year telling her to endorse the certificate of deposit on the Clinton bank and send it in and she would receive a new certificate; and introduced deeds showing conveyance by Emma Harbarth to Hermine Kemp of 5 quarter sections of land in South Dakota, and warranty deed to 'Carl Kemp of 2 lots in Clinton, Oklahoma.

At the close of all the testimony defendant demurred to the evidence and moved for a directed verdict on each cause of action, all of which were overruled by the court. Plaintiff's motion for directed verdict was also overruled.

The jury returned a verdict on the second cause of action in the first case in favor of plaintiff in the amount of $5,000 together with net earnings thereon, no interest; on the first cause of action, second case, in favor of plaintiff for the return of the 5 postal savings certificates; on the second cause of action, second case, in favor of defendant; on the third cause of action, second case, in favor of plaintiff in the amount of $6,925 (plaintiff made remittitur on this sum in the amount of $317.75, reducing the verdict to the sum of $6,607.25, representing $5,000 plus $82.50 accruals to September 30, 1946, plus 6% interest from said date to date of trial); on the fourth cause of action, second case, in favor of defendant. Defendant filed motion for new trial as to the second cause of action, first case, first cause of action, second case, and third cause of action, second case; plaintiff filed motion for new trial as to the second and fourth causes of action, second case. Both motions for new trial were overruled and judgment was entered in accordance with the verdicts rendered on each cause of action in each case. From such ruling defendant has appealed and plaintiff has cross appealed.

■ Defendant first urges that evidence to establish a resulting or constructive trust must be clear, cogent, convincing, and of such a nature as to establish the rights and relations of the parties, citing Turk v. Warr, 191 Okl. 253, 128 P.2d 835, and Bogert, Trusts and Trustees, Section 49, page 357; that the evidence as to each cause of action for which plaintiff obtained judgment does not meet this standard and is therefore insufficient to sustain the verdict of the jury and the judgment of the court; that defendant's evidence that a gift was intended is clear, cogent and convincing, citing cases which hold that where a parent purchases land in the name of a child or other natural object of bounty it will be presumed that a gift was intended but such presumption may be rebutted by adequate proof that the grantee was not to have the beneficial interest in the property.

■ Plaintiff's evidence, as above outlined, clearly shows that the deceased placed trust and confidence in defendant; that defendant handled numerous business transactions for deceased; that deceased kept careful record of the sums intrusted to defendant; that deceased continued up to the date of her death to claim ownership of such funds. The court instructed the jury many times that it must find that the evidence was clear, cogent and convincing that a trust relationship did exist between defendant and deceased. Though it might be said that defendant's evidence of gift is also direct and cogent, we cannot say as a matter of law that the evidence is not clear, cogent and convincing that there was a trust. This being true the question was properly presented to the jury and its determination of the question is binding on appeal.

■ Defendant next urges that the court erred in refusing to allow Hermine Kemp to testify that the transactions with deceased were gifts after plaintiff was allowed to testify with respect to the transactions and after Hermine Kemp was cross-examined with respect to them. Plaintiff did no

more than identify the various memoranda which were introduced in evidence as being in the handwriting of his deceased grandmother, grandfather, or defendant, as the case might be. Though defendant was not allowed to testify on direct examination that these items were gifts, on cross-examination she volunteered the information several times, and she introduced other witnesses who testified to the same effect. If error was committed, under the state of the record here her testimony would be merely cumulative, and the error, if any, is harmless.

Defendant next contends that the trial court erred in giving instruction No. 10 in each case, which advised the jury that the relationship of parent to child is not of itself sufficient to create the inference of a trust between the parties but if the parental relationship is accompanied by other facts sufficient to establish a fiduciary or confidential relationship between them then a trust relationship is presumed to exist. That the court should have given defendant's requested instructions, which stated that a transfer by a parent to a child without consideration raised presumption of a gift and the burden rests upon the party seeking to establish a resulting trust to prove by clear, satisfactory, convincing, and decisive proof that such transfer was not a gift.

■ As above stated the court instructed the jury no less than five times that the plaintiff must prove the allegations of his petition by evidence that was clear, cogent and convincing. He also instructed the jury that where a parent transfers property or money to a child without consideration and knowingly allows the child to put the legal title in the name of such child and the parent with right of survivorship a presumption is created that it was the intention of the parent that if the child survived the parent the child would become vested with the ownership of such property, and that to overcome such presumption the evidence must be clear, cogent and convincing. The instructions as a whole fairly present the issues to the jury.

Plaintiff on his cross-appeal contends that the trial court erred in sustaining defend-

ant's demurrer to his first cause of action, first case, on the note, because under the provisions of 48 O.S.1951, § 264, a holder of a note may release same at or after maturity and thus discharge the instrument, but such renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon. He quotes from cases from foreign jurisdictions to the effect that an endorsement on a note by a payee to the effect that same should become null and void at the death of the payee was ineffective to discharge the note because such a declaration was merely as to the intentions of the payee, not an express renunciation of his rights in the note against the party obligated thereunder; that such an endorsement on a note did not constitute a gift because there was no delivery. He further cites Daugherty v. Preuitt, 113 Okl. 66, 242 P. 529 which holds that if such an endorsement is a part of a separate contract between the parties it will be upheld, otherwise not.

■ It will be noted under the peculiar wording of this note, quoted above, that there is not an unconditional promise to pay; the promise is that the principal sum will be paid at the rate of $300 per year, without interest, "until the whole amount of the note is paid, or until the death of the payee". The contract was to pay until the happening of a contingency, the death of the payee. When this contingency happened the promise and obligation to pay terminated. As stated in Bergman v. Ornbaun, 33 Cal.App.2d 680, 92 P.2d 654, involving a state of facts similar to the ones here, this transaction did not constitute a gift because at the death of the payee the obligation ceased and there was nothing to give.

■ Plaintiff further contends that the judgment of the court on the second and fourth causes of action, second case, (which were based on the six $100 U. S. bonds and the loan of $6,000) is contrary to the law and the evidence. As above stated plaintiff was required to prove all his allegations by evidence that was clear, cogent and convincing. Though it might be said that he met this burden it can as easily be said that defendant's evidence that these items were

gifts was direct, clear and convincing. We cannot say as a matter of law that it was not. The jury's verdict upon this controverted question of fact is binding upon us.

Affirmed.

HALLEY, C. J., and CORN, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.